MOQUIN *v.* STATE

(Three Appeals in One Record)

[No. 210, September Term, 1957.]

*Decided May 2, 1958.*

526

The cause was argued before HENDERSON, HAMMOND,. PRESCOTT and HORNEY, JJ., and GRAY, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Joseph M. Mathias,* with whom were *Jones & Mathias* on the brief, for the appellant.

*E. Clinton Bamberger, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Alger Y. Barbee, State's Attorney for Montgomery County,* on the brief, for the appellee.

GRAY, J., by special assignment, delivered the opinion of the Court.

The appeal in this case involves a right of the state to prosecute for crime a defendant who had theretofore been adjudged a delinquent minor by a juvenile court on a petition alleging the facts which constitute the basis for the criminal charge. The appellant contends (a) that such a prosecution constitutes "double jeopardy" for the defendant and (b) that the juvenile court statute does not permit that court to waive jurisdiction in favor of a criminal court after an adjudication of delinquency.

The appellant was brought before the Juvenile Court for Montgomery County, established under the provisions of Chapter 151 of the Acts of 1955, now codified as Sections. 72 et seq. of Article 26 of the 1957 Code, on a petition which alleged that he was a delinquent child in that he set fires. to houses and that he committed an assault on William Moriarty. He was sixteen years old at the time of these alleged acts. This petition was filed on April 25, 1957, and the juvenile judge passed an order committing the appellant temporarily to the National Institute of Health. One month later this order was rescinded and the appellant was detained

in the juvenile detention quarters in Rockville until a hearing in that juvenile court on June 6, 1957. As a result of that hearing the appellant was found to be a delinquent child. He was placed under the jurisdiction of the court and he was committed to the University Hospital, Psychiatric Institute, Baltimore, Maryland, and the case was continued pending further order of the court. After some two months at the institute, the appellant eloped and thereupon his commitment to the institute was rescinded and the juvenile court on August 8, 1957, passed an order waiving jurisdiction and providing that the appellant be held for trial under the regular procedure of the Circuit Court for Montgomery County. Thereupon the appellant was charged in criminal informations with arson, burglary and assault with intent to murder. The appellant filed in each of these cases a motion to dismiss on the ground that the pending prosecutions would place him twice in jeopardy for the same offenses, and relied upon the proceedings in the juvenile court to preclude prosecution in the criminal court. This motion was denied and thereupon the appellant was tried, convicted, and sentenced in No. 2559, involving a charge of arson, and in No. 2562, involving a charge of assault with intent to murder. He was also convicted in the burglary case but sentence therein was suspended.

## DOUBLE JEOPARDY

The appellant's contention is that after a petition had been filed in a juvenile court charging him with being a delinquent minor by reason of having committed arson and an assault upon Moriarty, he was placed in jeopardy when at a hearing before the juvenile court he was adjudicated to be a delinquent minor and that he could not thereafter be prosecuted in a criminal court for the same offenses described in the juvenile petition. The determination of this question involves a decision as to whether a juvenile court proceeding places the minor in jeopardy in the common law sense of that phrase. The doctrine of double jeopardy is one of ancient origin and is designed to prevent the prosecution of a person a second time when he has already been subjected to the risk of "life and limb" in a prior trial. The concept

clearly contemplates that · the action which bars a second prosecution must be one instituted in a court which has the power to convict and punish the person prosecuted for his criminal conduct. See 4 *Blackstone's Commentaries* 335. Lewis Edition at pp. 1725-26.

The Maryland constitution contains no guaranty against double jeopardy and amendment 5 of the United States Constitution is not applicable to the state. *Palko v. Conn.,* 302 U. S. 319, 82 L. Ed. 288. The subject of double jeopardy has been before this court on many occasions. In the case of *State v. Shields,* 49 Md. 301, at page 303 of the opinion, this Court said: "It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, * * * be set aside and a new trial granted * * *." The matter was again before this court in *Robb v. State,* 190 Md. 641 and in that case the court reviewed the subject at some length in holding that a trial on appeal did not constitute double jeopardy. The matter was again before the court in *Johnson v. State,* 191 Md. 447. It seems clear from these authorities that the rule of double jeopardy is applicable only when the first prosecution involves a trial before a criminal court or at least a court empowered to impose punishment by way of fine, imprisonment or otherwise as a deterrent to the commission of crime. The question to be decided is whether the hearing before the Juvenile Court of Montgomery County subjected the defendant to the risk of these penalties. We answer this question in the negative. The juvenile act does not contemplate the punishment of children where they are found to be delinquent. The act contemplates an attempt to correct and rehabilitate. Emphasis is placed in the act upon the desirability of providing the necessary care and guidance in the child's own home, and while the act recognizes that there will be cases where hospital care or commitment to a juvenile training school or other institution may be necessary, this is all directed to the rehabilitation of the child concerned rather than punishment for any delinquent conduct.

The Act in Section 83 (e), Art. 26, Code (1957), expressly provides that:

> "No adjudication upon the status of any child in the jurisdiction of the court shall operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction of a crime * * *."

This Court recently had occasion to consider the defective delinquent statute, Article 31B of the Code, in the case of *Eggleston v. State*, 209 Md. 504. It was contended that the appellant's confinement in the Patuxent Institution was in effect double jeopardy having been superimposed upon a prior conviction and sentence. In commenting upon this argument this Court at page 513 said:

> "Moreover, the appellant's argument assumes that the new law is a penal statute imposing a new penalty for an established crime or crimes. We do not so regard it."

This Court considered at length the purpose and effect of the defective delinquent law, recognized that it contemplated confinement in the nature of treatment for the persons committed to the Patuxent Institution, and on page 515 commented as follows:

> "The detention is not by way of punishment for a crime, but is preventive and therapeutic."

Similar views were expressed in the later case of *McElroy v. Director*, 211 Md. 385. There the court held that because confinement in the Patuxent Institution was not the result of a criminal prosecution, an inmate there had no right to appeal to this court or to seek leave to appeal under the provisions of Article 42, Section 7 (1951 Code).[1] It is mani-

---

1. This statute was amended by Ch. 760 of the Acts of 1957 to authorize application for leave to appeal by such inmates, but the right of appeal in all habeas corpus cases was abrogated by the repeal of Sec. 6, Art. 42, of the Code by Ch. 45 of the Acts of 1958.

fest that if the proceeding under the defective delinquent law does not create double jeopardy nor expose an inmate there to criminal punishment, as was held in these two cases, then the proceeding in the juvenile court certainly did not do so. See also the case of *Bailey v. Superintendent,* 190 Md. 735, in which it was held that a patient in Spring Grove Hospital on commitment from a criminal court was not "detained for or confined as the result of a prosecution for a criminal offense". To the same effect is *Miller v. Superintendent,* 190 Md. 741. We conclude that an adjudication of delinquency in the Juvenile Court for Montgomery County did not bar the appellant's prosecution in the circuit court. The view here expressed finds support in the case of *People v. Silverstein* (Cal. App., 1953), 262 P. 2d 656. A somewhat similar view was expressed in the case of *State v. Smith* (N. D., 1946), 25 N. W. 2d 270.

## CONSTRUCTION OF THE STATUTE

The appellant also contends that the juvenile court, having held a hearing and determined that the appellant. was a delinquent minor, was not authorized by the statute to thereafter waive jurisdiction in favor of the criminal court. The juvenile court's authority to waive jurisdiction is found in Section 83 (e) of the Act. This sub-section, after providing that the proceeding in the juvenile court should not be deemed criminal action, provides in part as follows:

> "Nor shall any child be charged with or convicted of a crime in any court, except that in the case when a child 16 years of age or over is charged with an offense which would amount to a felony in the case of an adult, the judge, after full investigation, may waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult * * *."

It will be noted that except for requiring that a waiver be had only "after full investigation" the Act is entirely silent as to when the waiver may be had. We do not agree with

the appellant's contention that the statute means that at or before the hearing the juvenile judge must elect either to waive jurisdiction or to decide the case by determining whether or not the minor involved is delinquent. Had the legislature intended to impose this restriction, it could easily have said so. We think the more reasonable construction of the statute is that it permits a waiver at any time before the court loses jurisdiction either by lapse of time or discharge of the minor from the court's control. This construction seems more compatible with the general purpose of the Act. It is more consistent with its theory that the juvenile judge be permitted to thoroughly study the case, try any and all devices or techniques that may be available to him looking to rehabilitation of the child before being required to determine whether or not jurisdiction should be waived in favor of the criminal court. The case at bar is a good illustration of the need for careful weighing of this decision. Here was a lad charged with a whole series of serious depredations. They were indicative of some serious emotional problem. The court sent him to the National Institute of Health for a preliminary study and after hearing committed him to the Psychiatric Institute. It developed that he either could not or would not profit from treatment and then and only then did the court feel justified in waiving jurisdiction. Had the lad accepted treatment at the Institute and cooperated in efforts to effect his rehabilitation, it may have been entirely unnecessary to send him to the criminal court. Certainly the statute should not be so construed as to prevent the attempt to thus rehabilitate the minor.

The court concludes that the proceedings in the juvenile court did not place the appellant in jeopardy nor was the juvenile court too late in its determination to waive jurisdiction in favor of the criminal court. The judgment of the court below will be affirmed.

*Judgment affirmed, with costs.*

HAMMOND, J., filed the following dissenting opinion, in which HENDERSON, J., concurred.

If the statute means what the majority find it to mean,

Judge Henderson and I agree that the doctrine of double jeopardy is not applicable, because proceedings of the juvenile court are not criminal in nature and its dispositions are not punishment for crime. It was so held in *People v. Silverstein* (Cal. App.), 262 P. 2d 656, under a statute expressly providing that if a juvenile at any time after commitment by the juvenile authorities were found to be incorrigible or incapable of reformation, he could be returned for trial on the charge of the original crime.

Judge Henderson and I do not read the Montgomery County Act as the majority do. We think that it intends that the juvenile court, after full investigation, must either waive jurisdiction so that the child may be tried by the criminal court, or take and retain jurisdiction. Juvenile court statutes—the State wide Act, the Baltimore City Act and those throughout the country—have a common design that with the exception of grievous offenses, acts committed by a child that would otherwise be criminal are not to be so treated unless, after a full investigation, the juvenile court officially declares that they are to be. The statutes contemplate that in the great majority of cases the State will not seek to punish but rather to salvage the delinquent. In the accomplishment of this aim, the State extends to children whose acts otherwise would be criminal the same care and training as children who are merely neglected or destitute. The procedures used are civil inquiries and actions that look to treatment, reformation and rehabilitation. 41 Cornell Law Quarterly 147.

The Montgomery County Act, Code, 1957, Art. 26, Secs. 72-90, is in accord. It provides in Sec. 74 that one of its purposes is that "* * * when such child is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. *This provision shall be liberally construed to accomplish the purposes herein sought.*" Section 76 gives exclusive jurisdiction of delinquent children to the Judge of the Juvenile Court of Montgomery County. Section 78 defines a delinquent child as one who "commits any act which, if committed by an adult would be a crime

not punishable by death, or by life imprisonment; who is incorrigible * * * or is habitually a truant * * *." Section 82 (b) provides that any child whose custody has been assumed by the court may be released in the custody of a parent or other person appointed by the court, or detained in a suitable place of detention, "*pending the final disposition of the case.*" Section 83 (a) provides that the court shall conduct all hearings informally and may adjourn the hearings from time to time. Section 83 (b) says that if the court finds that the child is a delinquent child, it may by order place the child on probation or in the custody of a relative or other fit person upon such terms as it makes, or commit the child to a public or licensed private institution or agency. Section 83 (e) provides that "in the case when a child 16 years of age or over is charged with an offense which would amount to a felony in the case of an adult, the judge, *after full investigation,* may waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult." Section 76 (h) directs that "When jurisdiction shall have been obtained by the court * * *, such child shall continue under the jurisdiction of the court until he becomes 21 years of age unless *discharged* prior thereto * * *." (All emphasis supplied).

We think that the provisions of the statute make it plain that the judge is given ample power when a child is brought within the potential jurisdiction of the court to make a complete and full investigation which may continue for as long as is necessary to ascertain all the relevant facts, that there may be any number of hearings helpful for this accomplishment, and that when all the facts are available, the judge then must evaluate them and make his decision as to whether the child is a delinquent over whom the court will assume and retain jurisdiction or whether he is a delinquent who should be tried and punished by the criminal court. The statute contemplates, in our view, that this decision is the "final disposition of the case" referred to in Sec. 82 (b) and it would seem to be, at least, analogous to res judicata and certainly would be the law of the case to and require, if the

court takes jurisdiction, that "such child shall continue under the jurisdiction of the court until he becomes 21 years of age unless discharged prior thereto * * *," as provided in Sec. 76 (h). We find nothing in the statute that contemplates loss of jurisdiction of a delinquent, once formally taken, except by "discharge", and we see no indication that the waiver, that is to be made after full investigation, is considered as synonymous with discharge.

Section 87 provides that there may be an appeal to the circuit court from "any order or decree of the judge", within thirty days of its entry. This would seem to confirm that the final disposition of the case by the juvenile court is either waiver or assumption of jurisdiction, although, once jurisdiction is obtained the court of course can make whatever appropriate custodial or discharge orders as changes in circumstances from time to time dictate.

The construction we take of the Act has been found by Pennsylvania Courts to be a correct construction. The Superior Court stated in the case of *In re Holmes,* 103 A. 2d 454, 458, that "Furthermore, ordinarily, when the juvenile court assumes jurisdiction, makes an adjudication of delinquency and commits a child, it could not certify the case to the court of quarter sessions for criminal prosecution based on the same violations of law. *In re Trignani's Case,* 150 Pa. Super. 491, 494, 28 A. 2d 702." The case was affirmed by the Supreme Court of Pennsylvania under the same name in 109 A. 2d 523, 526, where the Court noted that the juvenile court act provided that the judge might, if in his opinion the interest of the State required a prosecution, certify it to the District Court of the County for proceedings the same as if the jurisdiction of the juvenile court had never attached, and went on to say that "such a certification could not be made after the Juvenile Court had made an adjudication of delinquency nor, perhaps, after any self-incriminatory examination of the child."

While the record does not so show, we are advised that neither in Baltimore City, where by far the largest number of juvenile cases arise, nor in Baltimore County, which also has a large number, have the respective juvenile courts ever

waived in favor of the criminal courts after assuming jurisdiction of a child as a delinquent, although, at least in Baltimore City, there have been a number of requests that it be done.

The consequences permissible under the statute as the majority read it are such as to suggest strongly that the reading is wrong. The juvenile court could find a child, who had committed an act otherwise criminal, to be delinquent and assume jurisdiction and commit the child to the training school. Years later, if the child was thought to be "incorrigible" or a "truant", the juvenile court could waive in favor of the criminal court so that he could be charged with the original criminal acts and tried and sentenced. Reformation and rehabilitation would not seem to be fostered by hanging over every juvenile delinquent committed for doing what would have been criminal, if done by an adult, a Damoclean Sword of ever-present threat of criminal prosecution, which would fall upon the doing of non-criminal acts far less serious than the original charges. We cannot ascribe to the Legislature an intent to permit such a result.

It is not difficult to see other objections to a construction which permits a waiver after juvenile court jurisdiction has been taken. The Act goes no further than to provide in Sec. 83 (e) that neither the disposition of the child nor any evidence given shall be admissible as evidence against him "in any case or proceeding in any other court." Undoubtedly, the judges are careful not to permit a child to incriminate himself until a decision is made that he is a delinquent and jurisdiction is assumed. It must be equally true that after the court takes jurisdiction of the child as delinquent, he urges him to cooperate with the court and the probation officers and to reveal fully all that has gone on in the past in the hope that it might help the court in the work of rehabilitation. If, after these frank disclosures have been obtained, the court should decide that the court is going to waive in favor of the criminal court, there would appear to be no statutory reason why the statements made or the facts they establish could not be used in aid of the prosecution in the criminal court. If this were done, as a practical matter it would

hamper, if not destroy, the ability of the probation workers to obtain the confidence and cooperation of many delinquent children, and certainly would be seriously detrimental to the work of rehabilitation.

We think that in the case before us the juvenile court was without power to send the boy to criminal court for trial and that the judgment and sentence appealed from should be reversed.