## CURTIS C. JOHNSON *v.* STATE OF MARYLAND

[No. 5, September Term, 1967.]

*Decided February 14, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*John R. Hargrove* for appellant.

*William T. S. Bricker, Special Assistant Attorney General*
with whom were *Francis B. Burch, Attorney General, Charles
E. Moylan, Jr., State's Attorney for Baltimore City,* and
*James B. Dudley, Assistant State's Attorney for Baltimore City,*
on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On October 4, 1966 the appellant, a boy 14 years of age at
the time of the commission of the crime for which he was con-
victed, was found guilty of murder in the first degree in the
Criminal Court of Baltimore, by the court sitting without a jury
and sentenced to imprisonment for the balance of his natural
life.[1]

The circumstances of the commission of the crime and its
perpetration by the appellant are not disputed. On November

---

1. An indictment was also returned against the appellant charging
him with robbery but was dismissed upon motion by the appellant
on the ground that the Circuit Court of Baltimore City having
jurisdiction in juvenile causes had not waived jurisdiction. That
Court has no jurisdiction over a "child" who has committed an
act which, if committed by an adult, would be a crime punishable
by death or life imprisonment. Charter and Public Local Laws of
Baltimore City, Flack (1949), Art. 4, § 240 (d) (1). Thus in such
case, waiver is not required. See *Bean v. State,* 234 Md. 432. (The
provisions of Md. Code (1966 Repl. Vol.), Art. 26, Sections 51-71
will not apply to the City of Baltimore until June 1, 1969. Chapter
127, Acts 1966).

10, 1965, about 8:00 P.M. the appellant seized the purse of a woman, disclosed by hospital records and the autopsy report to have been 75 years of age, 5 feet 3 inches in height and weighing 91 pounds, while she was walking on Cathedral Street near Centre Street. In resisting the robbery she was thrown to the gound, sustaining fractures of the pelvis, arm and hand and lacerations about the face and head, as a result of which she developed lobar pneumonia and died on November 21, 1965. The appellant took the stand and in the course of his testimony admitted that he had "snatched the purse."

On appeal the appellant contends that:

1. he was placed twice in jeopardy;

2. evidence relating to the robbery was inadmissible.

As the basis for both the contentions, the appellant states that a petition alleging that he was a delinquent child was filed in the Circuit Court of Baltimore City having jurisdiction in juvenile causes on November 12, 1965, on which date a hearing was held and the appellant was determined to be a delinquent child on the facts of the robbery. He was ordered detained at Boy's Village pending a social investigation and further hearing. He was indicted by reason of the death of the robbery victim and the matter before the juvenile court was dismissed. Evidence of the proceedings in the juvenile court were not proffered at the trial of the substantive offense and the question presented by the contentions were not raised before or tried and decided by the trial court. The questions were raised in argument on hearing on a motion for a new trial but the denial of that motion is not before us. *McCoy v. State,* 236 Md. 632. Not being tried and decided by the lower court before or at the trial, the questions need not be considered by us on appeal unless they invoke matters of the jurisdiction of the trial court, which are always before this Court, where jurisdiction cannot be conferred by waiver or consent of the parties. *Tate v. State,* 236 Md. 312; *Dortch and Garnett v. State,* 1 Md. App. 173; *Crum and Dunbar v. State,* 1 Md. App. 132; *Whitmer v. State,* 1 Md. App. 127; Maryland Rules, 1085. Counsel for the appellant argued before us that the defense of double jeopardy goes to the jurisdiction of the trial court. We see no need to decide that point, preferring to treat the question as properly

before us on the assumption, for the purpose of decision only, that the matter is jurisdictional. On this assumption and on the further assumption that the juvenile proceedings were in fact as stated, we shall consider it.[2]

## DOUBLE JEOPARDY

The appellant alleges that he was placed in jeopardy by the determination that he was a delinquent child in the juvenile proceedings on evidence that he committed the robbery and that he was put twice in jeopardy by the conviction of murder in the first degree as committed in the perpetration of the same robbery. A factual situation comparable to the instant case was presented to the Court of Appeals in *Moquin v. State,* 216 Md. 524 and the same contention raised. In *Moquin* the defendant was found to be a delinquent child in the Juvenile Court for Montgomery County on petition that he set fire to houses and committed an assault. He was committed to a psychiatric institution and the case was continued pending further order of the court. He eloped, his commitment was rescinded and the juvenile court waived jurisdiction. He was thereupon charged in criminal informations with arson, burglary and assault with intent to murder and tried, convicted and sentenced after motions to dismiss on the ground that the prosecutions would place him twice in jeopardy for the same offenses, relying on the proceedings in the juvenile court, were denied. The Court said, page 528 that the concept of double jeopardy "* * * clearly contemplates that the action which bars a second prosecution must be one instituted in a court which has the power to convict and punish the person prosecuted for his criminal conduct." [3] Stating that the rule "* * * is applicable only when the first prosecution involves a trial before a criminal court or at least a court empowered to impose punishment by way of fine, imprisonment or otherwise as a deterrent to the commis-

2. The statement of facts set forth in the briefs of the appellant and the State agree as to the juvenile proceedings although it appears that there is no transcript of the hearing before the juvenile court.
3. For a discussion of the double jeopardy rule applicable in Maryland see *Boone v. State,* 3 Md. App. 11.

sion of crime," (p. 528), it found that the juvenile court did not subject the defendant to the risk of those penalties:

"The juvenile act does not contemplate the punishment of children where they are found to be delinquent. The act contemplates an attempt to correct and rehabilitate. Emphasis is placed in the act upon the desirability of providing the necessary care and guidance in the child's own home, and while the act recognizes that there will be cases where hospital care or commitment to a juvenile training school or other institution may be necessary, this is all directed to the rehabilitation of the child concerned rather than punishment for any delinquent conduct." 216 Md. at 528.

It concluded that an adjudication of delinquency in the Juvenile Court for Montgomery County did not bar the defendant's prosecution in the circuit court. We cannot distinguish, in this frame of reference, the act conferring jurisdiction on the Juvenile Court for Montgomery County and the act conferring jurisdiction on the Circuit Court of Baltimore City.

The appellant argues further that proof of the commission of the robbery was determinative both of his being found to be a delinquent child and being found guilty of murder in the first degree. Therefore, he alleges, the offenses are not separate and distinct, but "merged in such a manner as to constitute one offense." Thus, he concludes, being found to be a delinquent child precludes prosecution for murder. This argument is predicated upon two presumptions: (1) that being a delinquent child is a crime; and (2) that the elements of its proof are necessary ingredients of the crime of murder in the first degree under the facts of this case. The juvenile act clearly provides that the charge of delinquency is not a charge of a commission of a crime and that a child found to be delinquent shall not be deemed a criminal. Charter and Public Local Laws of Baltimore City, *supra,* Art. 4, § 242 and § 249. But even assuming that it is a crime and further assuming that the elements of its proof are necessary ingredients of the crime of murder in the first degree (which we specifically do not decide), the appellant reaps no benefit. The juvenile court had exclusive jurisdiction over the

appellant in the determination of his delinquency and no jurisdiction to try him for murder. Charter and Public Local Laws of Baltimore City, *supra*, Art. 4, § 240 (d) (1). He was never placed in jeopardy for the greater offense by being "prosecuted" for the lesser "offense" before a court having no jurisdiction to try him for the greater offense. *Bennett v. State*, 229 Md. 208.

The appellant also alleges that an adult tried before a juvenile court can assert the defense of double jeopardy in a subsequent criminal proceeding, citing *Bennett v. State, supra*, as authority. It follows, he claims, that to prohibit the defense to a child would deny that child due process of law or equal protection of the laws. Again assuming, but not deciding, that such defense is so available to an adult, the distinction between the adult and the child is obvious. The adult, unlike the child, is subject to punishment in juvenile proceedings by fine or imprisonment. Charter and Public Local Laws of Baltimore City, *supra*, Art. 4, § 243.

The appellant urges that the applicability of the rule of double jeopardy in the instant case must be considered in the light of *Kent v. United States*, 383 U. S. 541, 86 S. Ct. 1045, decided March 21, 1966 and *In re Gault*, 387 U. S. 1, 87 S. Ct. 1428, decided May 15, 1967. He claims that "the matter of Juvenile Courts and its procedures, as well as the rights of juveniles have been tremendously affected" by those cases. The thrust of his argument is that *Kent* and *Gault* "have clearly abolished" the concept that a delinquent child is not punished and that proceedings against such child are directed to his rehabilitation. He says that those cases "have clothed the juvenile with virtually all of the constitutional protections afforded an adult in a criminal case," and a "juvenile matter under today's standards is the same as another criminal case." He urges on this premise that the rationale of *Moquin* is no longer appropriate and its decision not controlling in the appellant's case. With regard to *Kent* we found in *State v. Hance*, 2 Md. App. 162, that it was clearly concerned with the interpretation of the Juvenile Court Act of the District of Columbia and its effect, therefore, is limited to that jurisdiction. The Supreme Court declined to rest its decision on constitutional grounds. 383 U. S. at 556. With regard to *Gault* it seems that the appellant would have us

apply its rationale or philosophical basis, as he interprets it, but not its rulings, to his juvenile proceedings. For if its rulings as to notice of charges, right to counsel, confrontation, self-incrimination and cross-examination were so applied, it may well be that the determination that he was a delinquent child would be, by those rulings, invalid. If invalid the appellant would not have been jeopardized thereby. See *Boone v. State,* 3 Md. App. 11. We see no logic in the position that *Gault* is available to the appellant as to its rationale but not as to its rulings and find that *Gault* was in no wise available to the appellant.[4] Both the juvenile court proceedings against the appellant and his trial in the criminal court were before the decision in *Gault* but the appeal from the judgment by the criminal court was pending at the time of that decision. We held in *State v. Hance, supra,* that *Gault* was not retroactive, 2 Md. App. at 167, and we established the standard of its retroactivity with respect to waiver hearings in juvenile proceedings (on the assumption, but not the decision, that its rulings applied to such hearings) in *Hammer v. State,* 3 Md. App. 96. For the pur-

---

4. In view of our finding that *Gault* did not apply to the juvenile proceedings against the appellant, we need not decide whether, under it, proceedings for the determination of juvenile delinquency are now criminal in nature. We note that the Supreme Court discussed the basis whereby proceedings involving juveniles were civil not criminal (87 S. Ct. at 1438) and recognized that one of the important benefits of such proceedings was that they avoid classifying the juvenile as a "criminal" and permitted classifying him as a "delinquent." It said, "There is, of course, no reason why this should not continue." (at 1441). But it found that, "Failure to observe the fundamental requirements of due process has resulted in instances * * * of unfairness to individuals and inadequate or inaccurate findings of fact and unfortunate prescriptions of remedy." (at 1439). Due process, it said, requires notice of charges " * * * which would be deemed constitutionally adequate in a civil or criminal proceedings." (at 1446-1447). With regard to right to counsel it said that a proceeding " * * * where the issue is whether the child will be found to be a 'delinquent' and subjected to loss of his liberty for years is comparable in seriousness to a felony prosecution," (at 1448) and that such proceedings " * * * must be regarded as 'criminal' for the purposes of the privilege against self-incrimination." (at 1455).

pose of decision in the instant case we must specify the standard of the retroactivity of *Gault* with respect "to proceedings by which a determination is made as to whether a juvenile is a 'delinquent' as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution." (87 S. Ct. 1436). For such purpose, with respect to such proceedings, we hold that the rulings in *Gault* apply only to cases in which such proceedings first began, in the court having jurisdiction to make such determination, after May 15, 1967. In so holding we are again mindful of the rule that the federal constitution neither requires nor prohibits retroactivity, *Linkletter v. Walker,* 381 U. S. 618, and that the courts may, in the interest of justice, make a rule prospective where the exigencies of the situation require. Thus, *Gault* is not available to the appellant.

We have made the following findings in the instant case:

(1) the determination that the appellant was a delinquent child was not a prosecution before a criminal court or a court empowered to impose punishment and being a delinquent child is not a crime;

    (a) even assuming that being a delinquent child is a crime, the fact of the appellant's "prosecution" on such a charge before a court having no jurisdiction to try him for murder did not put him in jeopardy on a murder charge;

(2) the appellant was not put in jeopardy by juvenile proceedings against him merely because an adult may be put in jeopardy by proceedings against such adult in a juvenile court; there is a valid distinction between a child and an adult in such circumstances —the adult is subject to punishment by fine or imprisonment and a child is not;

(3) neither the rulings in *Kent* nor *Gault* were available to the appellant.

In view of these findings we hold that the prosecution and conviction of the appellant in the criminal court did not put him twice in jeopardy.

## THE ADMISSIBILITY OF THE EVIDENCE
## RELATING TO THE ROBBERY

The question raised by the contention that evidence relating to the robbery was not admissible in the criminal trial because presented previously in the juvenile court is clearly not jurisdictional. No objection to the evidence for the reason here advanced was made at the trial and the appellant admitted in his testimony that he had "snatched the purse". The question, not being tried and decided at the trial below, is not properly before us. Maryland Rules, 1085. In any event, we find the contention to be without merit. In support of his contention, the appellant cites the Charter and Public Local Laws of Baltimore City, Flack (1949), Art. 4, § 249. This section, dealing with the disposition of a child appearing before the court under juvenile proceedings, concludes by a paragraph as follows (the appellant quoted only the last sentence) :

> "No adjudication by the Judge upon the status of any child shall operate to impose any civil disabilities, nor shall any child be deemed a criminal by reason of such adjudication. The proceedings with reference to a child or any evidence given before the Judge shall not be admissible as evidence against the child in any case or proceedings in any other court."

The appellant construes these provisions to mean that evidence relating to the robbery was not admissible in the criminal trial because evidence of the same robbery was presented to the juvenile court in the determination that he was a delinquent child. Although the point was not specifically raised in *Moquin v. State, supra,* we feel that the decision in that case precludes the interpretation of the statute urged by the appellant. Although in *Moquin* the juvenile proceedings in question were in Montgomery County, the statute pertaining to such proceedings contains provisions comparable to the local law above quoted. Md. Code (1966 Repl. Vol.), Art. 26, § 83 (e). It is obvious that Moquin was convicted in the criminal court on evidence of acts which were also the basis of his being found to be a delinquent child in the juvenile court and the judgment was affirmed. The general law on juvenile causes contains pro-

visions in the exact language of the local law of Baltimore City above set forth. Md. Code (1966 Repl. Vol.), Art. 26, § 61. These provisions make it impermissible to attack the credibility of a witness by asking him about his past record of juvenile offenses, directly, *Braun v. State*, 230 Md. 82, or indirectly, *Westfall v. State*, 243 Md. 413. However, they are no bar to the consideration of the juvenile record in evaluating the individual's antisocial tendencies and status as a defective delinquent. *Gray v. Director*, 245 Md. 80; *Rice v. Director*, 238 Md. 137. In both *Gray* and *Rice*, we think it clear that the Court of Appeals construed the sentence, "The proceedings with reference to a child or any evidence given before the Judge shall not be admissible as evidence against the child in any case or proceeding in any other court" within the context of the sentence immediately preceding it—"No adjudication by the Judge upon the status of any child shall operate to impose any civil disabilities, nor shall any child be deemed a criminal by reason of such adjudication", and we so construe it in the instant case. It is apparent that the admission of the evidence relating to the robbery at the criminal trial did not result in imposing civil disabilities on the appellant or in deeming him a criminal *by reason of his adjudication as a delinquent child*. We again point out that, at the criminal trial, no evidence was offered of the adjudication of the appellant as a delinquent child and no reference was made to the proceedings in the juvenile court. We see no reason why the evidence of which the appellant now complains was not admissible.

*Judgment affirmed.*