WIGGINTON, Judge.
The State of Florida appeals a final judgment rendered by the Circuit Court of Volusia County which dismissed with prejudice a grand jury indictment charging appellee with the capital offense of forcible rape. The dismissal was predicated upon the conclusion reached by the trial court that to permit prosecution of appellee under the indictment pending against him would offend the constitutional guarantee against former jeopardy and would constitute a breach of fundamental fairness.
Appellee, a 16-year-old boy, was charged on November 12, 1970, by the Ormond Beach Police Department with forcible rape and aggravated assault with a deadly weapon. Based upon that charge, the juvenile counselor filed in the juvenile court of Volusia County a petition on November 17, 1970, alleging that appellee was a delinquent child within the meaning of the juvenile court act because of the charge made against him by the Ormond Beach police, and praying that a hearing be conducted by the court for the purpose of investigating the allegations of the petition. Six days later on November 23, 1970, the juvenile court held a hearing on the counselor petition, at which appellee was represented by his privately employed counsel and the State was represented by the assistant state attorney. At that hearing the assistant state attorney advised the juvenile court that the charge of rape against appellee was being referred to the grand jury for investigation and asked the court to waive jurisdiction in the case to the circuit court for further handling. Ap-pellee’s attorney objected to this request and insisted that the juvenile court proceed with the hearing and make such adjudication as the facts and law warranted. The request of the state attorney was denied and the hearing proceeded as scheduled.
Appellee was neither sworn nor did he testify in the case, nor were any confessions or admissions made by him filed in evidence. The victim testified concerning the acts constituting the rape and felonious assault made upon her and a psychiatrist testified as to his examination of appel-lee. This medical expert testified that his examination indicated that appellee’s problem was due to the situation existing in his home in which his father was an authoritative figure, and it was the exertion of authority on appellee by his father that caused appellee to commit the criminal acts with which he was charged as a means of striking back at his father. The psychia *674 trist recommended that appellee be taken from his parents’ home and removed from the authoritative influence of his father, and that he not be returned to his home until his father had submitted to psychiatric treatment or therapy for the ostensible purpose of eliminating his authoritative influence over appellee. Based upon the foregoing testimony, the juvenile court rendered its judgment in which it found that the conduct and behavior of appel-lee were such as to injure and endanger his welfare and others because he forcibly committed rape and assaulted his victim with a deadly weapon, thereby rendering him a delinquent child. Based upon that finding the juvenile court committed ap-pellee to the Division of Youth Services for an indeterminate period of time until he is legally discharged, but not beyond his 21st birthday.
Eleven days after rendition of the juvenile court judgment and commitment, the grand jury of Volusia County indicted ap-pellee for rape. He was taken into custody by the law enforcement officers and, while incarcerated, filed his petition for writ of habeas corpus in the circuit court seeking his release from confinement on the indictment against him on the ground of former jeopardy. After hearing the case, the circuit court treated the petition for writ of habeas corpus as a motion to quash the indictment. By its judgment the circuit court found and held that the prosecution of appellee for the crime of rape would constitute a breach of fundamental fairness and would deny appellee due process of law under the constitutions of the State of Florida and the United States because the identical offense charged in the indictment was the exclusive basis for appellee’s adjudication of delinquency in the juvenile court of Volusia County. It was held that the juvenile court adjudication of delinquency estopped the State of Florida from prosecuting appellee for the rape of his victim because to permit it would violate the spirit and prohibitions of law against former jeopardy. Appellee’s motion to dismiss the indictment was thereupon granted and the sheriff was ordered to deliver ap-pellee to the custody of the Division of Youth Services under the juvenile court commitment.
It is the position of appellant that the proceeding filed in the juvenile court charging appellee with being a delinquent child under the provisions of Chapter 39, F.S., is not a criminal but a civil proceeding in which appellee is neither charged nor convicted of having committed a crime against the laws of this state but merely with being a delinquent child as defined in F.S. Section 39.01(11), F.S.A., as follows: “‘Delinquent child’ means' a child who commits a violation of law, regardless of where the violation occurs.” Appellant points to Article I, Section 15, of the Florida Constitution, F.S.A. which provides that “No person shall be tried for capital crime without presentment or indictment by a grand jury, * * * ” Appellant contends, and correctly so, that the petition filed by the juvenile counselor charging appellee with being a delinquent child cannot be considered the equivalent of a grand jury indictment charging him with the capital offense of rape. Since the juvenile court proceeding was not based upon an indictment by a grand jury, appellant contends that the juvenile court proceeding could in no sense be considered a trial of appellant for the crime of rape, nor could the judgment of the juvenile court finding him to be a delinquent child be tantamount to a conviction of the capital crime of rape. In State ex rel. Williams v. Grayson,[1] the Supreme Court of Florida defined jeopardy as occurring when a person “is put upon trial under an indictment or information sufficient in form and substance to sustain a conviction before a court of competent jurisdiction and a jury has been impaneled and sworn and charged with his deliverance.” Appellant contends that since appellee was never put upon trial *675 under an indictment or information before the juvenile court nor afforded a trial by-jury sworn and charged with his deliverance, it cannot be held that jeopardy attached by that proceeding thereby barring subsequent prosecution on the indictment rendered by the grand jury.
Appellant furthermore calls attention to that provision of the juvenile court act contained in F.S. Section 39.10(3), F.S.A., which is as follows:
“An adjudication by a juvenile court that a child is a dependent or delinquent child shall not be deemed a conviction, nor shall the child be deemed to have been found guilty or to be a criminal by reason of that adjudication, nor shall that adjudication operate to impose upon the child any of the civil disabilities ordinarily imposed by or resulting from conviction, nor to disqualify or prejudice the child in any civil service application or appointment.”
It is upon the foregoing declaration of public policy as embodied in the provisions of the juvenile court act that appellant relies to demonstrate that juvenile proceedings fall wholly outside the realm of criminal proceedings and an adjudication rendered therein cannot constitute the basis for former jeopardy as a bar to a subsequent prosecution of a child for the act found to constitute the basis for his delinquency.
F.S. Section 39.02(6) (a), F.S.A., of the juvenile court act permissively authorizes a juvenile judge to waive its jurisdiction of a proceeding brought against a juvenile 14 years of age or older if the act forming the basis for the child’s alleged delinquency would constitute a felony under the laws of Florida. In this event the juvenile court shall certify the case to the court which would have jurisdiction of the child if he were an adult. F.S. Section 39.02(6) (c), F.S.A., provides that when an indictment is returned by the grand jury charging a child of any age with a violation of Florida law punishable by death or by life imprisonment, the juvenile court shall be without jurisdiction, and the child shall be handled in every respect as if he were an adult.
Appellant invites the court’s attention to the fact, that the juvenile court in the case sub judice held a hearing, refused to relinquish jurisdiction and adjudged appel-lee to be a delinquent child within the short period of six days from the date on which the petition of the juvenile counselor was filed in the court. Although the indictment in this case was returned by the grand jury within 12 days thereafter, had the indictment been returned prior to the date on which the juvenile court adjudged ap-pellee to be a delinquent child and committed him to the Division of Youth Services of the State of Florida, then the juvenile court would have lost jurisdiction of the case by virtue of the provisions of F.S. Section 39.02(6) (c), F.S.A. If the position of the appellee is sustained, it would appear that the stage would then be set for a race to the courthouse to see whether a child who commits a capital offense under the laws of Florida may escape prosecution in the criminal court by a hurry-up delinquency proceeding in the juvenile court in which he pleads guilty or enters no objection to an adjudication finding him to be a delinquent child because of the criminal offense which he committed. If such maneuver can be successfully accomplished, then under the theory advanced by appellee the child may never be subsequently prosecuted in the criminal court for the offense he has committed even though the period of time he may be lawfully confined in the custody of the Division of Youth Services may not go beyond his 21st year of age.
It is appellant’s position that the juvenile court proceeding, being civil in nature, has resulted in a judgment which merely confines appellee to the custody of the Division of Youth Services for an indeterminate period of time in order that he may be rehabilitated through psychiatric therapy and counselling and thereafter re *676 turned to lead a normal life. Appellant insists that in no sense of the word can this be equated to imprisonment in a state prison as punishment for violating a criminal law of this state.
Appellee’s position raises several questions, the answer to which should be obvious. If, instead of opposing his prosecution for rape in the circuit court under the grand jury indictment, appellee had insisted on a speedy trial and the opportunity of proving his innocence, could the State have opposed such motion and moved the court to dismiss the indictment because appellee has already been tried and convicted of rape in the juvenile court and therefore the subsequent prosecution is barred on the principle of former jeopardy? Alternatively, if appellee had submitted to a trial on the grand jury indictment without objection, and been found not guilty, could such an acquittal be used as a basis for setting aside the juvenile court adjudication that he was a delinquent child? The answer to the foregoing questions must be in the negative. If the negative answer is required, then it would follow that the juvenile court adjudication of delinquency is not such a conviction of a criminal offense as would constitute a bar to subsequent prosecution under the prohibition against former jeopardy.[2]
Appellee seems to concede the correctness of the legal principles urged by appellant insofar as they define the elements of former jeopardy. Appellee contends, however, that the statutory concept of a juvenile court proceeding being strictly civil in nature and having none of the critical attributes of a criminal prosecution is now superseded by and is no longer effective because of recent decisions rendered by the Supreme Court of the United States and other courts in the federal jurisdiction. The decisions on which ap-pellee relies warrant individual study and analysis.
In the case of Kent v. United States,[3] the appellant minor, while subject to the juvenile court jurisdiction, admitted having committed several criminal offenses against the laws of the District of Columbia. Appellant’s attorney filed several motions in the juvenile court proceedings pending against appellant, including a request to examine appellant’s social records and similar reports. Without passing on such motions or granting appellant’s request, and without an evidentiary hearing on whether the juvenile court should waive its jurisdiction and transfer the case to the criminal court for prosecution, an order of transfer was entered and appellant was turned over to the criminal court for prosecution. The Supreme Court held that the action of the juvenile judge in refusing to pass on appellant’s motions or to grant a hearing on the question of relinquishment of jurisdiction deprived appellant of a substantial right to due process, as a result of which the case was remanded for an evidential hearing on the issue of the legality of the transfer. On the question of whether juvenile proceedings are tantamount to criminal proceedings conducted in the criminal courts of our country, the Supreme Court in Kent said:
“ * * * Its proceedings [juvenile court] are designated as civil rather than criminal. The Juvenile Court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. The objectives are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment. The State is parens patriae rather than prosecuting attorney and judge * * *
* 5}í >}C >{C * 5ji
“We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a crim *677 inal trial or even of the usual administrative hearing; hut we do hold that the hearing must measure up to the essentials of due process and fair treatment * * * ”
In Application of Gault,[4] a 15-year-old minor was adjudged to be a delinquent child and committed to the state industrial school of Arizona. The parents of the child were not properly notified of the adjudicatory hearing to be held by the court; the petition stating the charges was not filed until the day of the hearing and was never served on the minor or his parents; the complaining party was not present at the hearing nor were any witnesses sworn to testify; the boy was not advised of his constitutional rights to remain silent and to be represented by counsel. In reversing the commitment the Supreme Court of the United States held that the manner in which the adjudicatory hearing was conducted deprived the minor of due process of law because juvenile delinquency proceedings which may lead to commitment in a state institution must measure up to the essentials of due process and fair treatment, including a written notice of the specific charges against the minor to be served on the child and his parents sufficiently in advance of the hearing to allow preparation; notification of the right of the minor to be represented by counsel employed by him or appointed by the court if he is indigent; application of the privilege against self-incrimination; and absent a confession, a determination of delinquency based only on sworn testimony subjected to the opportunity of cross-examination and confrontation of witnesses. With regard to the character of the proceedings conducted in a juvenile court, the court in Gault said:
“ * * * In the first place, juvenile proceedings to determine ‘delinquency,’ which may lead to commitment to a state institution, must be regarded as ‘criminal’ for purposes of the privilege against self-incrimination * * * ”
The court, by enunciating the qualification quoted above, continued to recognize the distinction between the civil character of juvenile proceedings as distinguished from the criminal character of proceeding conducted in the criminal courts.
In the case of In re Winship,[5] the Supreme Court of the United States held that although the due process clause embodied in the 14th Amendment does not require that a juvenile delinquency proceeding conform with all the requirements of a criminal trial, nevertheless the constitutional guarantee which provides that in criminal prosecutions one may be convicted only upon proof beyond a reasonable doubt applied with equal force to juvenile delinquency proceedings and that juveniles, like adults, were constitutionally entitled to proof beyond a reasonable doubt during the adjudicatory stage of the proceedings when the juvenile is charged with an act which would constitute a crime if committed by an adult. Although this decision preserved the clear distinction between the civil aspects of the juvenile delinquency proceeding and the criminal characteristics of a criminal court trial, it did hold that certain constitutional guarantees of due process required to be observed in the trial of criminal cases such as adequate notice of charges against the minor, adequate notice of the adjudicatory hearing, the right to remain silent and to be represented by counsel, the right against self-incrimination, and the right to be confronted by and to cross-examine witnesses against him must be observed in the adjudicatory phase of a child delinquency proceeding conducted in a juvenile court.
In Waller v. Florida,[6] the petitioner was tried and convicted in the municipal court *678 of St. Petersburg for destruction of city property and disorderly breach of the peace when he participated in the removal of a canvas mural from the city hall. On the basis of the same acts he was later charged in the circuit court of Pinellas County and convicted of grand larceny. In reversing his second conviction, the Supreme Court of the United States held “that on the basis of the facts upon which the Florida District Court of Appeal relied [in affirming his conviction] petitioner could not lawfully be tried both by the municipal government and by the State of Florida. In this context a ‘dual sovereignty’ theory is an anachronism, and the second trial constituted double jeopardy violative of the Fifth and Fourteenth Amendments to the United States Constitution.” Obviously, the decision in Waller is irrelevant to the case sub judice in that Waller was tried in two separate tribunals for separate criminal acts against the ordinances and laws of the municipality and state, which acts were identical in each case. Such is not the situation present in the case we now review.
In the case of Huitín v. Beto,[7] the Fifth Circuit Court of Appeals considered a case arising under the laws of the State of Texas. The appellant, when a minor 16 years of age, was charged in the juvenile court of Texas as a delinquent child for having feloniously assaulted another minor. A supplemental petition was immediately filed by the minor asking the court to also take jurisdiction of another act committed by him in which he stabbed and killed a second minor child. The juvenile court heard testimony concerning both offenses and accepted the minor’s confession to both crimes, whereupon he was adjudged to be a delinquent child on the basis of both the assault and the murder. Upon such finding, the juvenile judge committed appellant to the custody of the Texas Youth Council until he reached the age of 21 years. Appellant was taken into custody under his commitment but when he later reached the age of 17 years, he was indicted, tried and convicted as an adult for the offense of murdering one of the same children for which he was adjudged a delinquent by the juvenile court. He brought petition for writ of habeas corpus and finally worked his way into the federal system. In granting habeas corpus and holding invalid the criminal court judgment finding appellant guilty of murder, the Court of Appeals said:
“ * * * [T]he state may not ‘violate those “fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.” ’ * * * Being of the opinion that the state’s actions in this case do not meet the test of ‘fundamental fairness’ under the due process clause of the Fourteenth Amendment, we do not reach the double jeopardy question.
“The federal and state courts in Texas have in recent years considered whether the procedure to which appellant was subjected violates the Fourteenth Amendment. Both courts have agreed that ‘A juvenile cannot “be adjudged a delinquent child and held in custody as such, and, without regard to how he may respond to the guidance and control afforded him under the [Texas] Juvenile Act, be indicted, tried, and convicted of the identical offense after he reaches the age of 17.” ’ ”
It appears from the foregoing decision that under the law of Texas no minor may be tried for a criminal offense if he is less than 17 years of age. In Florida, a minor 14 years of age or older may be tried for any felony if the juvenile court relinquishes jurisdiction and transfers the case to the criminal court, or a child of any age may be tried for a capital case and, upon indictment, the juvenile court loses jurisdiction over the minor. The effect of the decision by the Court of Appeals in the Huitín case is that it is fundamentally unfair to find a child to be a delinquent in *679 a juvenile court proceeding and place him in custody for rehabilitative treatment until he reaches his majority, and then, after he attains the age of 17 years, proceed to indict, try, and convict him for the offense which formed the basis of his adjudication of delinquency, particularly so when at the time he committed the offense he could not have been tried in the criminal courts of that state because he was below the minimum age of 17 years. Because of the difference between the law of Texas and the law of Florida, it is doubtful whether the decision by the Court of Appeals in Hultin is applicable to the case sub judice. The factors which impelled the court to hold in Hultin that the subsequent trial in the criminal court was fundamentally unfair to the minor are not present here.
The most recent decision regarding juvenile court proceedings is that of Mc-Keiver v. State of Pennsylvania, decided by the Supreme Court of the United States, opinion filed June 21, 1971.[8] That case was concerned solely with the question of whether the due process guarantees of the United States Constitution requires that minors be accorded a right to trial by jury in the adjudicative phase of a juvenile court delinquency proceeding. The Supreme Court held that a jury trial in such a proceeding was not required under the due process clause and could be dispensed with by the states without vio^ lating the constitutional rights of minors. In so holding, the Supreme Court reemphasized the distinction between juvenile court proceedings and criminal court proceedings when it said:
“This, of course, does not automatically provide the answer to the present jury trial issue, if for no other reason than that the juvenile court proceeding has not yet been held to be a 'criminal prosecution,’ within the meaning and reach of the Sixth Amendment, and also has not yet been regarded as devoid of criminal aspects merely because it usually has been given the civil label. * * *
“Little, indeed, is to be gained by any attempt simplistically to call the juvenile court proceeding either ‘civil’ or ‘criminal.’ The Court carefully has avoided this wooden approach. * * *
* * * * * *
“If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. * * * ”
The Supreme Court commented that it “has refrained, in the cases heretofore decided, from taking the easy way with a flat holding that all rights constitutionally assured for the adult accused are to be imposed upon the state juvenile proceeding.” In summing up the import of its decisions in both Gault and Winship, the Supreme Court said that “the applicable due process standard in juvenile proceedings as developed by Gault and Winship, is fundamental fairness.”
On the basis of the foregoing federal court decisions, several factors clearly emerge. Firstly, child delinquency proceedings conducted in juvenile courts, although in one aspect may be considered analogous to criminal court proceedings in that they may result in the forcible confinement of the minors involved, are nevertheless civil in nature in which the issue to be determined is whether the child is delinquent within the meaning of the juvenile court act and not whether he is guilty of having committed a criminal offense against the laws of the state. Secondly, in the adjudicatory phase of such proceeding certain due process requirements must be met such as due notice to the child and its parents of the specific charges against him; due notice of the hearing to be held on such charges; a right to remain silent, to be represented by counsel, and against self-incrimination; the right to be confronted by *680 and cross-examine the witnesses against him; a final order setting forth the court’s reasons for finding the minor to be delinquent. Thirdly, the principles of former jeopardy recognized and enforced in the trial of criminal cases have no application to an adjudication of delinquency by a juvenile court when the basis of the delinquency is a violation of the criminal laws of the state. The sole criteria to be applied in determining whether a minor who has been adjudged a delinquent child because of having violated a criminal law of the state may be later prosecuted and convicted in the criminal courts for such violation is that of “fundamental fairness.” This term has not yet been defined by any of the courts who have utilized it in reaching an ultimate decision as to whether a subsequent criminal court conviction should stand or be stricken. It would therefore appear that the question of “fundamental fairness” must be determined on the basis of the facts in each case. Although each of the federal court decisions discussed above evince great solicitude and compassion for the welfare of the juveniles whose criminal acts have enmeshed them in the toils of the law, they are wholly devoid of any expression of the barest concern for the welfare of the victims, their loved ones or the fabric of our contemporary society. The time has long since passed when the courts of our country should start striking a balance between what is fundamentally fair for a juvenile guilty of committing a criminal act, as compared to what is fundamentally fair for the juvenile’s victims, their families, and society’s right to be free from lawless acts, whether or not committed by minors.
In the case sub judice it is observed that the State of Florida was vigilant from the inception in its insistence that the county juvenile court take no action against appel-lee which would jeopardize or interfere with the criminal court’s investigation of the rape with which appellee was ultimately charged. Despite the State’s concern and interest in the matter, the j uvenile judge insisted on retaining jurisdiction and entering his order adjudicating appellee to be a delinquent child. The indictment by the grand jury followed immediately, and the child was promptly taken into custody by the criminal court authorities. We find nothing in the record before us which can reasonably be said to support the conclusion reached by the trial court that to now require appellee to answer for the offense with which he is charged in the indictment would constitute fundamental unfairness. The juvenile court adjudication finding him to be a delinquent child for having committed the offense of rape was undergirded by his full cooperation and resulted from his own urging over the timely objection of the criminal court authorities. If he was sufficiently mature at age 16 to feloniously assault and forcibly rape a mature woman, it would appear that he was sufficiently mature to have appreciated the unlawful character of his act and is sufficiently responsible to answer for its consequences. To make this requirement of appellee would not, in the words of the federal court in Hultin, supra, “violate those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions”.
The judgment appealed is reversed and the cause remanded for further proceedings.
Reversed.
SPECTOR, C. J., and RAWLS, J., concur.

. State ex rel. Williams v. Grayson, Fla.1956, 90 So.2d 710, 713.

. Florida Constitution, Art. 1, Sec. 9.

. Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045. 1054. 1057, 16 L.Ed.2d 84.

. Application of Gault, 387 U.S. 1, 87 S.Ot. 1428, 1455, 18 L.Ed.2d 527.

. In re Winship, 397 U.S. 358, 90 S.Ot. 1068, 25 L.Ed.2d 368.

.Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 1188-1189, 25 L.Ed.2d 435.

. Huitín v. Beto (5th Cir.1968), 396 F.2d 216.

. McKeiver v. State of Pennsylvania (1971), 403 Ü.S. 528, 91 S.Ot.1976, 29 L.Ed.2d 647.