## EX PARTE CROMWELL

[Misc. No. 2, September Term, 1963, (Adv.)]

306

*Decided July 12, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Juanita Jackson Mitchell* and *Tucker R. Dearing* for appellants.

*Robert C. Murphy, Deputy Attorney General,* and *C. Burnam Mace, State's Attorney* for Dorchester County, for the State.

HENDERSON, J., delivered the opinion of the Court.

The appellants in these cases were charged in the Circuit Court for Dorchester County with being juvenile delinquents, found so on June 10, 1963, by the court sitting as a juvenile court and committed, respectively, to the Maryland Training School for Boys and the Montrose School for Girls, the State training schools for delinquent children. Appeals were entered to this Court on June 13, 1963, and on June 18, 1963, petitions were filed in this Court praying that each child be released to the custody of their respective mothers, pending the final determination of the appeals. By agreement between counsel for the petitioners and the Attorney General of the State and the State's Attorney for Dorchester County we heard arguments on the petitions on June 27, 1963, at which time documentary evidence was submitted on both sides, in the form of letters from the trial judge, ministers, school teachers and other persons.

Code (1957), Art. 26, sec. 65, provides that "Any interested party aggrieved by any order or decree of the judge, [sitting as a juvenile court], may appeal therefrom to the Court of Appeals. * * * The pendency of any such appeal * * * shall not suspend the order of the judge regarding such child, nor shall it discharge such child from the custody of the person, institution or agency to whose care such child shall have been committed by the judge, under § 61, *unless the Court of Appeals shall so order."* (Emphasis supplied.) This language has not heretofore been construed by this Court, but we have no hesitation in holding that it recognizes, if it does not directly confer, the authority of this Court to entertain petitions similar to those in the case at bar, pending the determination of an appeal. Cf. *Bd. of Public Welfare v. Myers,* 224 Md. 246, 250. We think, however, that the power should be sparingly exercised, because of the wide discretion conferred upon the trial judge by section 61, and the power therein reserved to him to alter at any time an initial placement, as he deems to be for the best interests of the child. It has been held in other states that reversal should only be for clear error of law or abuse of discretion. See 31 Am. Jur. *Juvenile Courts,* § 87, and cases cited.

Section 61 of our statute also provides that "No adjudication by the judge upon the status of any child shall operate to impose any civil disabilities, nor shall any child be deemed a criminal by reason of such adjudication." It is clear that the statute is aimed at the protection and rehabilitation of the child, not its punishment. Cf. *Moquin v. State,* 216 Md. 524. The power exercised by the State is that of *parens patriae.* See 43 C.J.S. *Infants,* § 7. The Maryland statutes are not unique in this respect. See *Pee v. United States,* 274 F. 2d 556 (C.A. D.C.) and cases cited. The fact that parents may be deprived of the custody of their own children presents no constitutional problem. Cf. *Ross v. Pick,* 199 Md. 341, 351. The test is what is best for the child.

The petitions allege that Dwight, aged fifteen, and Dinez, aged fifteen, Negro children residing in Cambridge, Maryland, were arrested from three to six times for participating in peaceful protests against racial segregation. It is asserted that the findings of delinquency were based entirely upon this, and that

the infant petitioners were thereby deprived of their Constitutional rights to free speech in violation of the Fourteenth Amendment to the Constitution of the United States.

We think it is far from clear that the infant petitioners have the same Constitutional rights to participate in protests as are enjoyed by adults. Children are under recognized disabilities in many respects. They do not enjoy the right to vote, to enlist in the military forces, or to operate motor vehicles (under the age of sixteen). Because of their lack of mature judgment they are subject to the continuing control and supervision of parents or guardians until they become of age or are emancipated. Nor does the record show that this finding of delinquency was based entirely on the fact that the petitioners engaged in peaceful protests. It was brought out at the hearing that both children had unsatisfactory school records, kept late hours, and were apparently emotionally disturbed or at least not amenable to school or home control. When released from jail, on one occasion, they immediately went to the Dorset Theatre where, in company with others, they entered without tickets, lay on the floor, used profane language and refused to leave until arrested. But we express no opinion at this time upon the finding of delinquency, which will be considered when the appeals are heard. The only matter now before us is the propriety of the court's ruling that the infant petitioners be lodged in the training schools pending the determination of the appeals.

We find no abuse of discretion in the court's action under the circumstances of this case. We may take judicial notice of the fact that Governor Tawes on June 14, 1963, saw fit to send the State Militia to Cambridge to prevent threatened outbreaks of violence, and that the town was virtually under military occupation at the time of the hearing in this Court. The trial court may well have felt that it was in the best interest of these children that they be removed from the scene of danger, where they would be safe from the physical injuries they might suffer if they remained at home and persisted in their past course of action. There was abundant evidence before the trial court that the parents of these children were either indifferent to the participation by their children in the group activities, or actively encouraged their participation. This, in itself, might

support a finding of unfitness on the part of the parents. Neither mother seems to have been a model of propriety and the respective fathers were absent from the homes. On this record we cannot say that the trial judge was clearly wrong in declining to release these children to the custody of their mothers or that the temporary commitments violate any Constitutional principles.

The petitioners also contend that they were denied Constitutional rights in that the trial court did not set bail for their release. The short answer is that the proceedings in the lower court, sitting as a juvenile court, are not criminal in nature, and there is no provision for bail in the statute. It is generally held that the failure to provide for bail in juvenile proceedings is not a violation of the Federal Constitution. See note 160 A. L. R. 287. See also *Ex Parte Walters,* 221 P. 2d 659 (Okla.), and 31 Am. Jur. *Juvenile Courts,* § 57.

In order that there may be no unnecessary delay, however, we shall advance the appeals in these cases for hearing during the first week of the September Term when we reconvene. Nothing we have said herein is intended to foreclose the filing of a further petition in the trial court for modification of the orders of commitment, should the situation in Cambridge clear up to the point where further demonstrations are unlikely.

*Petitions denied, with costs.*

BRUNE, C. J., filed the following concurring opinion.

In view of very recent and extremely regrettable events, including renewed and very serious violence, which have occurred at Cambridge, of which I think we may take judicial notice, I concur in the result as for the present best interests of these children.