## MASSAGE PARLORS, INC. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 19, September Term, 1978.]

*Decided February 23, 1979.*

*P. Paul Cocoros,* with whom were *Gerald A. Kroop, Ronald I. Kurland* and *Howard Margulies* on the brief, for appellant.

*Richard M. Hartman, Chief City Solicitor,* with whom was *Benjamin L. Brown, City Solicitor,* on the brief, for appellees.

COLE, J., delivered the opinion of the Court.

At issue in this appeal is the validity of Baltimore City Ordinance No. 159 (the ordinance), commonly known as The Massage Parlors Act.

On August 27, 1976, the Mayor and City Council of Baltimore (the City) declared its purpose and intent "to protect and preserve the health, safety and welfare of the inhabitants of the City [by providing] a program for regulating massage establishments so as to eliminate the social difficulties existing in many massage establishments and to promote higher standards of health, sanitation and professional competence therein." In furtherance of this purpose, the City enacted Ordinance No. 159 which added new sections 106-121 inclusive to Article 15 of the Baltimore City Code, entitled "License", to come under the new subtitle "Massage Establishments", effective immediately. After defining in § 106. massage, massage establishment and massagist,[1] the ordinance sets forth certain exemptions in § 107, requires a massage establishment to be licensed in § 108, mandates the registration of all massagists in § 109, creates a Board of Licenses for Massage Establishments empowered to promulgate rules and regulations to carry out the purpose of the ordinance in § 110 and prohibits certain unlawful acts, providing penalties therefore in § 116.

---

1. 106. Definitions and Rules.

\* \* \*

(b) Massage means the administration by any person of any method of exerting or applying pressure, friction, moisture, heat, or cold to the human body, or the rubbing, stroking, kneading, pounding or tapping of the human body by any physical or mechanical means for any form of consideration.

(c) Massage establishment means any building, place or operation wherein a massage is administered or permitted to be administered for any form of consideration.

(d) Massagist means any person who administers a massage for any form of consideration.

Pursuant to this ordinance, on August 30, 1976 the Board of Licenses for Massage Establishments (the Board) promulgated regulations which contained provisions governing the issuance of licenses for and the periodic inspection of such establishments, minimum training requirements of 500 hours for each massagist and stating a prohibition against heterosexual massages on the licensed premises. With this legislative setting, we turn to the facts giving rise to this controversy.

Massage Parlors, Inc., (appellant) had operated a massage parlor in the City of Baltimore for several months prior to August 27, 1976. Thereafter, pursuant to the ordinance, appellant was issued a temporary permit. However, on January 11, 1977, the permit was revoked on the ground that appellant's establishment was engaging in heterosexual massages. Appellant instituted suit against the City and the Board, claiming that the ordinance was unconstitutional and seeking injunctive relief. The City countered with a petition for an injunction to prevent the appellant from operating a massage parlor without the license required by the ordinance.

The matter was docketed in the Circuit Court No. 2 of Baltimore City where the parties waived oral arguments and proceeded by memoranda of law and a stipulation of facts. The chancellor upheld the licensing scheme as a valid exercise of the City's police power and enjoined appellant from operating as a massage establishment until it obtained a license in compliance with the ordinance. Appeal was taken to the Court of Special Appeals. We granted certiorari prior to that court's consideration of the issue. We shall affirm and state our reasons.

Appellant first challenges the validity of the ordinance, contending that it is unconstitutional on its face because § 116 (a) (2) prohibits massages between members of the opposite sex and thus promotes sex discrimination in violation of the equal protection clause of the fourteenth amendment to the Constitution [2] of the United States and Article 46 of the

---

2. "No State . . . shall deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

Maryland Declaration of Rights.[3] Section 116 (a) (2) says: "(a) It is unlawful . . . to (2) Provide treatment at the same time to persons of the opposite sex in the same room or quarters." The obvious purpose of the legislation seems to be to prevent customers of the opposite sex from being placed in direct contact with or proximity to one another during the period of treatment. The ordinance says nothing concerning the sex of the massagist. Inferentially, the same room may be used at separate times for treatment of persons irrespective of the sex of the customer or the massagist.

We have said on numerous occasions that when a legislative enactment presents no ambiguity, it should be read according to its plain meaning. Judge Orth stated the principle succinctly for the Court in *Wheeler v. State,* 281 Md. 593, 596, 380 A. 2d 1052 (1977), *cert. denied,* 435 U. S. 997:

> The cardinal rule of statutory construction is to ascertain and carry out the real legislative intention. *Balto. Gas & Elect. Co. v. Board,* 278 Md. 26, 31, 358 A. 2d 241 (1976). A statute should be construed according to the ordinary and natural import of the language used without resorting to subtle or forced interpretations for the purpose of limiting or extending its operation. *Burch v. State,* 278 Md. 426, 429, 365 A. 2d 577 (1976); *Cearfoss v. State,* 42 Md. 403, 407 (1875). That is, we must confine ourselves to the statute as written, and may not attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute. *In Re Appeals Nos. 1022 & 1081,* 278 Md. 174, 178, 359 A. 2d 556 (1976). Thus, if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the Legislature. *Maryland Auto Ins. Fund v. Stith,* 277 Md. 595, 597, 356 A. 2d 272 (1976). As we said in *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 66, 327 A. 2d 483 (1974), "where statutory language is

---

3. "Equality of rights under the law shall not be abridged or denied because of sex."

plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view toward making the statute express an intention which is different from its plain meaning."

*See also Schweitzer v. Brewer,* 280 Md. 430, 374 A. 2d 347 (1977); *Mazor v. State, Dep't of Correction,* 279 Md. 355, 369 A. 2d 82 (1977); *Howell v. State,* 278 Md. 389, 364 A. 2d 797 (1976); *District Land v. Wash. S.S.C.,* 266 Md. 301, 292 A. 2d 695 (1972). As we read the ordinance, it aims to prohibit *simultaneous treatment* of persons of both sexes in the same room; it does not establish any sexual distinction as to who may administer a massage to persons of either sex.

The appellant retorts that the ordinance is still invalid because the regulation promulgated pursuant to the ordinance prohibits heterosexual massages. Regulation 10 issued by the Board of Licenses for Massage Establishments states:

> The Board hereby interprets Section 116 (a) (2) of Ordinance No. 159 as prohibiting heterosexual massages and all inspections of massage establishment[s] shall include a review of any such activities.

As we see it, the validity of the regulation purporting to prohibit heterosexual massages cannot be determined in the context of the constitutional argument presented here because appellant's argument focuses exclusively on the ordinance. Moreover, even assuming that the regulation is properly before the Court, its validity derives, by its own terms, from the validity of the ordinance. That is, the regulation prohibiting heterosexual massages can be justified only if the ordinance itself prohibits heterosexual massages. It is well settled that where the language of a statute is clear and unambiguous, an administrative interpretation must be reasonable and consistent with the letter and policy of the statute under which the agency acts. *Baltimore v. William E. Koons, Inc.,* 270 Md. 231, 237, 310 A. 2d 813 (1973); *Farber's, Inc. v. Comptroller,* 266 Md. 44, 50-51, 291 A. 2d 658 (1972);

*Bene. Fin. Co. v. Adm'r, Loan Laws,* 260 Md. 430, 442, 272 A. 2d 649 (1971); *Atlantic, Gulf v. Dep't of Assess. & T.,* 252 Md. 173, 183, 249 A. 2d 180 (1969). In the instant case, the language of the ordinance is clear, and it therefore becomes unnecessary to decide whether the ordinance is constitutionally deficient on the basis of sex discrimination because the ordinance on its face does not prohibit heterosexual massages and because the authority ascribed to the ordinance to support the regulation does not exist.

Appellant next levels a broadside attack against the ordinance claiming it violates the equal protection clause of the fourteenth amendment in that it provides for invidious class legislation. As a threshold proposition, we note that the equal protection clause guarantees that similar persons will be treated in a similar manner by the state. However, it does not deny to a state or local government the power to treat different classes of persons differently, provided those classifications are based upon permissible criteria and are not arbitrarily used to burden a group of individuals. If the governmental classification relates to a legitimate governmental purpose the classification will be permitted. *Reed v. Reed,* 404 U. S. 71, 92 S. Ct. 251, 30 L.Ed.2d 225 (1971); *McDonald v. Board of Election,* 394 U. S. 802, 89 S. Ct. 1404, 22 L.Ed.2d 739 (1969); *Attorney General v. Johnson,* 282 Md. 274, 385 A. 2d 57 (1978); *Wheeler v. State, supra.*

The Supreme Court and this Court have applied different tests when evaluating a classification challenged as violating the equal protection clause. When the statute or ordinance restricts a fundamental right, (such as the right to privacy, right to vote, or the right to marry) or creates an inherently suspect classification (such as race, nationality or alienage), courts employ the strict scrutiny test requiring the state to establish that the classification is necessary to promote a compelling state interest. Otherwise courts ordinarily apply the rational basis test (sometimes labelled the fair and substantial relationship test) which requires that a statutory classification bear a rational relation to or rest upon some ground of difference having a fair and substantial relation to

a legitimate state objective. *Attorney General v. Johnson, supra; Wheeler v. State, supra; Md. St. Bd. of Barber Ex. v. Kuhn,* 270 Md. 496, 507, 312 A. 2d 216, 222 (1973). The legislative classification is presumed to be constitutional. Thus, if any state of facts can adequately be advanced that would justify the classification, the existence of those facts will be assumed by the court to be the basis of the classifications in order to uphold the legislation. *McGowan v. Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L.Ed.2d 393 (1961); *Dorsey v. English,* 283 Md. 522, 390 A. 2d 1133 (1978); *Attorney General v. Johnson, supra; Davidson v. Miller,* 276 Md. 54, 70, 344 A. 2d 422, 432 (1975); *see Governor v. Exxon Corp.,* 279 Md. 410, 439, 370 A. 2d 1102, 1118 (1977), *aff'd,* 437 U. S. 117, 98 S. Ct. 2207, 57 L.Ed.2d 91 (1978).

The ordinance here involves no fundamental right nor suspect class; we look then to determine if the classifications bear any reasonable or rational relation to the legislative objective. Preliminarily, we note that the clear purpose of the ordinance is to insure bona fide health services. The evidence before the chancellor was sufficient to support the City's concern in this regard and to justify the City's interest in assuring its citizens that massage establishments would render health services rather than provide the sites for sexual misconduct[4] in disorderly houses.

Appellant does not challenge the right of the City to legislate in this field but concedes that this is an area in which the City may legitimately exercise its police powers. Thus, appellant only questions the means by which the City seeks to achieve a legitimate governmental objective.

Appellant neither in its brief nor in oral argument made a serious effort to convince us that the exemptions included in § 107 (a) (physicians, surgeons, osteopaths, chiropractors, or therapists); § 107 (b) (Nurses); § 107 (c) (hospitals, medical clinics or nursing homes); § 107 (d) (trainers or any duly constituted athletic team) are not rationally and reasonably related so as to promote the legislative objective. Appellant's

---

4. Section 116 (b) provides that "No person conducting a massage establishment shall tolerate on the premises . . . prostitution, sodomy, perverted sexual practices, a bawdy place, adultery, fornication . . . and all obscene matter."

lack of persuasion is understandable in light of the fact that each of these exemptions includes persons or institutions which are already subject to more stringent licensing regulations as a result of being associated with organized professions or other related health fields.[5] Some of our sister states have recognized the wisdom of exempting such groups from the licensing provisions of massage parlor laws.

In *Rogers v. Miller,* 401 F. Supp. 826 (E.D. Va. 1975), the City of Falls Church, Virginia imposed an annual licensing tax of $5,000.00 on massage parlors by ordinance. The United States District Court held the ordinance was not violative of equal protection, even though the tax was not also imposed upon beauty parlors, barbershops, doctors, osteopaths, nursing homes and hospitals performing massage services.

In *United Health Clubs of America, Inc. v. Strom,* 423 F. Supp. 761, 766 (D. S. C. 1976) the court held that:

> [T]he long history which both the YMCA and YWCA have established as health clubs, conforming to every provision of the law, without encroaching in any respect, on the health, safety, welfare or morals of the citizens of South Carolina, provides ample reason for the General Assembly to exempt these two organizations from the coverage of the South Carolina Massage Parlor Act. Having conducted their businesses in a perfectly legitimate manner for so many years, this court agrees with the General Assembly that there is no reason to conclude that these organizations will not continue their present

---

5. Appellant argued before the chancellor that Regulation No. 8, requiring that it employ only massagists who have had a minimum of 500 hours of training in an institution approved by the State of Maryland, is an unreasonable exercise of the police power. This contention is without merit. This Court has repeatedly upheld the power of the State to regulate the conduct of various professions or businesses through reasonable licensing requirements. *See, e.g.,* Aitchison v. State, 204 Md. 538, 105 A. 2d 495, *cert. denied* sub nom. Aitchison v. Maryland, 348 U. S. 880, 75 S. Ct. 116, 99 L. Ed. 692 (1954) (naturopathists); Landay v. Zoning Appeals Board, 173 Md. 460, 196 A. 293 (1938) (junk dealers); Kimmell v. Westernport, 140 Md. 506, 117 A. 748 (1922) (restaurants). *See also* Rogers v. Miller, 401 F. Supp. 826 (E.D. Va. 1975), where the court expressly held that it was not an unreasonable exercise of the city's licensing power to require massagists to complete 1,000 hours of an approved course of study.

lawful method of conducting their business in the years ahead.

In *Kisley v. City of Falls Church,* 187 S.E.2d 168 (Va.), *appeal dismissed,* 409 U. S. 907, 93 S. Ct. 237, 34 L.Ed.2d 169 (1972), the Supreme Court of Virginia upheld a local ordinance regulating "health clubs and massage salons" and forbidding massages by persons of the opposite sex. The challenged ordinance exempted hospitals and other medical facilities, and exercise clubs which provided no massage services and were patronized solely by persons of one sex, as well as barber and beauty shops. Noting the presumptive validity of legislative classifications, the court rejected the contention that the exemption for barber and beauty shops violated equal protection principles. In so holding, the court noted the difference in services, hours, and advertising techniques employed by massage salons and barbershops. The court said, *id.* at 172:

> Massages obtained in barber shops are incidental to other services offered and are usually given to the scalp or face. . . . On the other hand, massage is the principal service of massage parlors . . . [and extends to] every part of the body.

In the case sub judice the exempted persons or institutions in §§ 107(a) through (d) offer massages as incidental services to their primary activity and as such a reasonable and rational basis exists for not requiring them to be licensed.

The main thrust of appellant's argument is directed at subsections (e) and (f) of § 107, which exempt

> (e) Any bona fide health spa or health club offering or providing massages solely incidental to the furnishing of facilities for and instruction in physical fitness and actually occupying premises of not less than 3000 square feet, of which not more than 10 per cent is used for massages.

> (f) Any corporation or association which is organized and operated exclusively for social or athletic purposes and which offers or provides

massages solely incidental to the furnishing of
facilities for such purposes and which actually
occupies premises of not less than 3000 square feet,
of which area not more than 10 per cent is used for
massages.

Appellant claims the ordinance here bases its classification
solely on square footage. We disagree. As we read §§ 107 (e)
and (f), we perceive an intent by the City to permit certain
bona fide organizations to carry out their primary purposes
and render massages incident thereto, subject to specified
space requirements, without the necessity of procuring a
massage license. The ordinance distinguishes between
facilities primarily engaged in furnishing massages from
those which offer massage as an incidental aspect of a more
general provision of services. Section 107 (e) exempts from
regulation those health clubs providing massages only
incidental to furnishing facilities for physical fitness and
§ 107 (f) those social or athletic associations which provide
massages incidental to those activities. In both cases the
overall premises must occupy at least 3000 square feet of
which 10 per cent or less is devoted to furnishing massages.
Far from arbitrary classification, these provisions are
reasonable and rational means of limiting the regulation of
massage establishments to the recognized root of the problem
— the small establishment primarily geared toward providing
massages rather than the bona fide health, social, or athletic
organization which furnishes massages only as an incidental
service.

In *Williamson v. Lee Optical Co.,* 348 U. S. 483, 75 S. Ct.
461, 99 L. Ed. 563 (1955), the Supreme Court upheld a
legislative scheme which prohibited opticians from fitting or
duplicating lenses without a prescription from an optometrist
or ophthalmologist, but exempted sellers of ready-to-wear
glasses. In determining that this classification did not offend
the equal protection clause, the Court theorized that the
ready-to-wear industry might pose a smaller problem or
might require separate regulation if it presented unique
problems. Since the Court found no invidious discrimination,

the Court upheld the legislative decision as to which phases of a problem required regulation in a particular manner.

The Court speaking through Mr. Justice Douglas said (348 U. S. at 489):

> The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. (Citations omitted.)

Like the legislation in *Williamson,* the legislative classification is designed to address specific problems affecting the public health and welfare, in this case, the social difficulties associated with massage parlors. We hold the exemptions in subsections (e) and (f) of § 107 do not unreasonably discriminate against massage establishments and appellant's argument fails.

Finally, appellant urges us to hold that the ordinance infringes upon its "fundamental right to work." We interpret appellant's contention to mean that the ordinance unreasonably limits its right to pursue a lawful occupation and therefore, denies it due process of law.[6] We have held that the right of an individual to engage in a lawful business is entitled to protection under the Due Process and Equal Protection Clauses of the fourteenth amendment and by Article 23 of the Declaration of Rights.[7] *Md. St. Bd. of Barber*

[6]. Appellant is a Maryland corporation and as such is protected as a person under due process concepts. Brooks v. State Board, 233 Md. 98, 108, 195 A. 2d 728 (1963); Luman v. Hitchens Bros. Co., 90 Md. 14, 44 A. 1051 (1899).

[7]. "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." The words, "the Law of the land"

*Ex. v. Kuhn, supra; Sigma Delta Chi v. Speaker,* 270 Md. 1, 7, 310 A. 2d 156 (1973); *Brooks v. State Board,* 233 Md. 98, 107, 195 A. 2d 728 (1963). This right, however, is subject to the lawful exercise of the police power by the state and it may regulate or restrict the freedom of the individual to act when such regulation is essential to the protection of the public health, morals, safety and welfare. *Md. St. Bd. of Barber Ex. v. Kuhn, supra; Dasch v. Jackson,* 170 Md. 251, 264, 183 A. 534 (1936). Here, we have held that the ordinance bears a rational and reasonable relation to a legitimate state objective. This argument also fails.

As the ordinance poses no question of sex discrimination and involves no arbitrary classification scheme in its exemption provisions we hold that appellant has not been denied equal protection of the laws and the order of the Circuit Court No. 2 of Baltimore City is affirmed.

*Decree affirmed; appellant to pay costs.*

---

in Art. 23 are derived from Magna Charta, Wright v. Wright, 2 Md. 429 (1852); and have been equated by this Court with the words "due process of law" as used in the Fourteenth Amendment, Matter of Easton, Incompetent, 214 Md. 176, 133 A. 2d 441 (1956).