# IN RE: LAURENCE T.

[No. 92, September Term, 1978.]

*Decided July 26, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ray E. Stokes, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. MURPHY, C. J., and ORTH, J., dissent and MURPHY, C. J., filed a dissenting opinion in which ORTH, J., concurs at page 630 *infra.*

We shall determine in this appeal whether the failure of a parent to promise restitution is a factor to be considered in deciding if delinquency proceedings should be instituted against a juvenile.

On August 17, 1977 the appellant, Laurence T., together with two other juveniles allegedly broke into a private residence in Montgomery County, ransacked the house, took $12.00 in cash and caused twelve hundred dollars in damage. The three juveniles were apprehended at the scene and taken into custody. The father of the appellant's two confederates

took charge of his sons shortly thereafter and promised to pay for two-thirds of the damage. The appellant's mother, however, refused to take immediate custody of her son and made no firm commitment to make restitution. The appellant was kept in a juvenile facility until the following day when his mother came to get him.

On November 10, 1977 a petition alleging delinquency was filed against the appellant in the District Court of Maryland, for Montgomery County, Juvenile Division.[1] No proceedings were instituted against the appellant's confederates. When the case against the appellant came before the District Court for a full hearing on January 4, 1978 appellant's counsel moved to dismiss the petition. He argued that the decision to file a petition against the appellant but not against the other boys was premised on whether a parent had promised to pay restitution, that this distinction in treatment was based on the parents' relative abilities to pay, and that the appellant was thereby denied equal protection and due process. In support of this motion, counsel for the appellant elicited the following testimony from the Intake Supervisor of the Juvenile Services Administration concerning the disparity in treatment of the appellant and the other boys (emphasis supplied):

Q: Do you have any records with you regarding Laurence T [.] . . . or . . . [the other boys]?

A: I have a file regarding Laurence . . . T [.] . . . .

\* \* \*

Q: Calling your attention to the bottom of the first page of that report, could you read to the Court the last four lines, approximately four lines of that report regarding restitution?

\* \* \*

A: Ok. Write-up which is in Mr. T. [.] . . .'s files . . ., and I quote as follows: "The victim was sent a restitution form in an attempt to — attempt to verify what is due for damages. The . . . [parents of the

---

1. In Montgomery County, the District Court of Maryland has jurisdiction in juvenile causes. Maryland Code (1974), § 4-403 of the Courts and Judicial Proceedings Article.

other boys] have agreed to pay their share. . . . Mrs. T [.] . . . was very reluctant to commit herself to paying restitution in any amount initially. Toward the end of the conference she said she would try, but still made no commitment. This also contributes to the decision to request formal court action for Laurence but not the co-respondents."

Q: In all fairness, the report does indicate some other emotional problems that Mr. T [.] . . . might have, which could have contributed to the decision to go with a formal petition against him, does it not?

A: That's correct.

Q: *But it does very emphatically show that the decision not to file the petition against the co-respondents was simply based on their agreement to pay restitution?*

A: *That's correct.*

Q: *And that the inability or refusal to pay restitution for Mr. T [.] . . . was in fact a substantial factor in the decision to go formal with his case?*

A: *I guess that is part of the decision.*

After argument by counsel, the district court dismissed the petition against the appellant as violative of due process and equal protection.

The State appealed, and the Court of Special Appeals reversed and remanded the case for further proceedings in an unreported per curiam opinion. *In Re: Laurence T.,* No. 65, September Term, 1978, filed September 26, 1978. The Court of Special Appeals stated that Maryland Code (1974, 1978 Supp.), § 3-810 of the Courts and Judicial Proceedings Article vests broad discretion in intake officers to determine whether a petition should be filed, and that absent a showing of "unjustifiable discrimination," the exercise of some selectivity does not violate the fourteenth amendment. That court held that the evidence relating to the reasons for filing a petition against the appellant included non-economic factors which precluded a finding of unjustifiable discrimination.

Laurence T. then petitioned this Court, and we granted certiorari to him to determine whether the State could properly consider his mother's failure to promise restitution in determining if a petition should be filed against him.

Before this Court the appellant presents alternate contentions. He first suggests that indigency is a suspect class and that we should, therefore, use strict scrutiny in evaluating his claims. Second, he asserts that even if only a rational basis test is employed, the State's unequal application of § 3-810 to him and his confederates based on whether a parent made a commitment to pay restitution amounts to impermissible discrimination.[2]

The State, on the other hand, takes the position that the filing of the delinquency petition against the appellant was not unconstitutional. It maintains that indigency is not a suspect classification. Further, the State argues that there was a rational relationship between the filing of the petition and appellant's mother's failure to make restitution, and that even if the payment criterion is unjustifiable, the appellant still failed to prove that the discrimination was intentional.

The statutory provisions concerning juvenile causes appear in Maryland Code (1974, 1978 Supp.), §§ 3-801 et seq. of the Courts and Judicial Proceedings Article. The purposes of this subtitle and of juvenile proceedings in general are the treatment and rehabilitation of the child, § 3-802 (a) (1); an adjudication of a child pursuant to this subtitle is not a criminal conviction, § 3-824 (a). *See also In Re Johanna F.,* 284 Md. 643, 399 A. 2d 245, 250 n. 12 (1979); *Ex Parte Cromwell,* 232 Md. 305, 192 A. 2d 775 (1963); *Simmons v. Director,* 227 Md. 661, 177 A. 2d 409 (1962); *Moquin v. State,* 216 Md. 524, 140 A. 2d 914 (1958); *In Re Appeal Misc. No. 32, Term 1975,* 29 Md. App. 701, 351 A. 2d 164 (1976). An "intake officer" of the Juvenile Services Administration has substantial discretion in considering whether to file a petition regarding a particular

---

2. The arguments in the body of appellant's brief are phrased solely in terms of equal protection. Due process is mentioned only in one footnote. Because of our disposition of this case on equal protection grounds, *infra,* it will be unnecessary to elaborate on or decide any due process question.

child.[3] The officer may resort to the courts "if, based upon the complaint and his preliminary inquiry, he concludes that the court has jurisdiction over the matter and that judicial action is in the best interests of the public or the child." § 3-810 (c). Petitions alleging delinquency must be prepared and filed by the State's Attorney. § 3-812; *United States v. Ramapuram,* 432 F. Supp. 140 (D. Md. 1977).

---

3. Maryland Code (1974, 1978 Supp.), § 3-810 of the Courts and Judicial Proceedings Article provides in pertinent part:

(a) Any person or agency having knowledge of facts which may cause a person to be subject to the jurisdiction of the court may file a complaint with the intake officer of the court having proper venue.

(b) In considering the complaint, the intake officer shall make a preliminary inquiry within 15 days as to whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child. He may, after such inquiry and in accordance with this section, (i) authorize the filing of a petition, (ii) conduct a further investigation into the allegations of the complaint, (iii) propose an informal adjustment of the matter, or (iv) refuse authorization to file a petition.

(c) The intake officer may authorize the filing of a petition if, based upon the complaint and his preliminary inquiry, he concludes that the court has jurisdiction over the matter and that judicial action is in the best interests of the public or the child. The intake officer shall inform the parties, and if practicable, the complainant, preferably in person, of his decision to authorize the filing of a petition and the reasons for his decision.

(d) The intake officer may conduct a further investigation if he concludes based upon the complaint and his preliminary inquiry, that further inquiry is necessary in order to determine whether the court has jurisdiction or whether judicial action is in the best interests of the public or the child. The further investigation shall be completed and a decision made by the intake officer within 10 days, unless that time is extended by the court.

(e) The intake officer may propose an informal adjustment of the matter if based on the complaint, his preliminary inquiry, and such further investigation as he may make, he concludes that the court has jurisdiction but that an informal adjustment, rather than judicial action, is in the best interests of the public and the child. If the intake officer proposes an informal adjustment, he shall inform the parties of the nature of the complaint, the objectives of the adjustment process, the conditions and procedures under which it will be conducted, and the fact that it is not obligatory. The intake officer shall not proceed with an informal adjustment unless all parties to the proceeding consent to that procedure.

(f) During the informal adjustment process, the child shall be subject to such supervision as the intake officer deems appropriate; however, no party is compelled to appear at any conference, produce any paper, or visit any place. The informal adjustment process shall not exceed 90 days unless that time is extended by the court. If all of the parties do not consent to an informal adjustment, or such adjustment cannot, in the judgment of the intake officer, be

While we recognize the wide discretion conferred upon intake officers and State's Attorneys under this subtitle, we are equally mindful that such discretion must be exercised within constitutional limits. Stated another way, the equal protection clause [4] requires that agents exercising a state's power as set forth in a statute must apply that power with an even hand. The Supreme Court rather succinctly stated the proposition in the landmark decision of *Yick Wo v. Hopkins,* 118 U. S. 356, 373-74, 6 S. Ct. 1064, 30 L. Ed. 220 (1886) when Mr. Justice Matthews, for the Court, stated that

> [t]hough the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

In *Snowden v. Hughes,* 321 U. S. 1, 8-10, 64 S. Ct. 397, 88 L. Ed. 497 (1944), the Supreme Court amplified its holding in *Yick Wo* by indicating that the exercise of some selectivity in enforcing a state statute fair on its face did not in and of itself amount to a constitutional violation. The Court required some proof of intentional and purposeful discrimination. Mr. Chief Justice Stone in stating the proposition said

> [t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated

---

completed successfully, he shall authorize the filing of a petition or deny authorization to file a petition pursuant to subsection (g).

(g) If based upon the complaint, his preliminary inquiry, and such further investigation as he may make, the intake officer concludes that the court has no jurisdiction, or that neither an informal adjustment nor judicial action is appropriate, he may deny authorization to file a petition. He shall, in that event, inform the complainant, in writing, of his decision, the reasons for it, and the complainant's right of review provided in this section.

4. U. S. Const. amend. XIV, § 1 reads in pertinent part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."

alike, is not a denial of equal protection *unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person, . . . or it may only be shown by extrinsic evidence* showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself . . . . *But a discriminatory purpose is not presumed; . . . there must be a showing of "clear and intentional discrimination,"* . . . . [(citations omitted) (emphasis supplied)].

Under these guidelines, we must in the instant case determine whether the selective enforcement of the juvenile statutes to the appellant's detriment was deliberately based upon an unjustifiable standard or arbitrary classification.[5] *See Giant of Md. v. State's Attorney,* 267 Md. 501, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915, 93 S. Ct. 2733, 37 L.Ed.2d 141 (1973); *Drews v. State,* 236 Md. 349, 204 A. 2d 64 (1964), *appeal dismissed,* 381 U. S. 421, 85 S. Ct. 1576, 14 L.Ed.2d 693 (1965).

Our review of the record persuades us that the appellant has met his burden of proving discriminatory enforcement of the laws in violation of the equal protection clause. We fail to discern any rational relation between the purpose of juvenile proceedings, to afford treatment and rehabilitation to the offender, and the criterion the State admittedly used as a basis for its differentiation between the appellant and the other boys, whether a juvenile's parent promises to make restitution.

A juvenile's personal need for State rehabilitative services is distinct from the question of his parent's ability to pay

---

5. We decline to follow the appellant's suggestion that strict scrutiny should be used to review the State's actions in this case. In Maher v. Roe, 432 U. S. 464, 471, 97 S. Ct. 2376, 53 L.Ed.2d 484 (1977), the Supreme Court expressly rejected the argument that "financial need alone identifies a suspect class for purposes of equal protection analysis". Therefore, assuming that appellant has been represented by the Public Defender's Office and that his mother would not commit herself to pay restitution because she and the appellant are indigent, these factors, by themselves, do not call for the application of strict scrutiny.

restitution. It is entirely plausible in the instant case that the other boys might also benefit from State rehabilitation and treatment programs. However, the State's focus on ability to pay costs foreclosed such an inquiry. As such, the circumstances of this case may be analogized to *Tate v. Short,* 401 U. S. 395, 91 S. Ct. 668, 28 L.Ed.2d 130 (1971), where the Supreme Court held that it was a denial of equal protection to limit punishment for traffic offenses to payment of fines for those able to pay them but to convert fines to imprisonment for those unable to pay, and to *Williams v. Illinois,* 399 U. S. 235, 244, 90 S. Ct. 2018, 26 L.Ed.2d 586 (1970), where the Court held that the equal protection clause "requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status." *See also Griffin v. Illinois,* 351 U. S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956); *Haley v. Troy,* 338 F. Supp. 794, 801 (D. Mass. 1972).

The juvenile causes provisions of the Code are consistent with our conclusion that consideration of the failure of a parent to promise restitution is unjustifiable at the intake and petition-filing stage. Section 3-829 of the Courts and Judicial Proceedings Article authorizes the entry of a judgment for restitution where appropriate at a later stage of the juvenile proceedings.

In addition to our conclusion that the State's employment of the standard of a parent's promise to pay restitution at the intake stage was arbitrary and unjustifiable, we are of the opinion that the State's action against the appellant was deliberate. In this case the element of intentional or purposeful discrimination appears on the face of the action taken. The testimony of the Intake Supervisor of the Juvenile Services Administration amply demonstrates that the State's differing courses of action concerning appellant and the two other boys were the product of a deliberative process involving information based on written reports. The decision to "go formal" with the appellant's case but not with the others was specifically predicated upon a standard which was impermissible under the circumstances of this case.[6]

6. The Court of Special Appeals erred when it concluded that the existence of certain non-economic factors could save the classification made by the

While law enforcement officials may determine to proceed against one lawbreaker and not another for the same unlawful act, the equal protection clause prohibits state law enforcement officials from purposefully and intentionally singling out individuals for disparate treatment on a discriminatory basis.

The intake officers, in the instant case, intentionally and unlawfully discriminated against Laurence T. and thereby denied him the equal protection of the law.

> *Judgment of the Court of Special Appeals reversed; case remanded to that court to enter an order affirming the judgment of the District Court; Montgomery County to pay costs.*

*Murphy, C. J., dissenting:*

I agree with the Court that a juvenile's personal need for juvenile rehabilitative services is distinct from the question of his parent's ability to pay restitution to compensate for his delinquent act. Obviously the decision to charge a juvenile under a delinquency petition cannot turn on the failure of the parent to promise or pay restitution. I cannot, however, agree with the Court that the State's action in filing the delinquency petition in this case constituted an intentional and purposeful discrimination violative of the equal protection clause of the Fourteenth Amendment.

As the record discloses, and as the Court of Special Appeals held, the intake supervisor, who was the sole witness at the hearing on the appellant's motion to dismiss, testified that the intake records demonstrated that the appellant "had some

---

State. Nowhere do the decisions of the Supreme Court in the discriminatory enforcement area indicate that an otherwise impermissible standard may be rendered constitutional simply by the presence of other "neutral" criteria. However, any conceivable neutral purpose will suffice to uphold a statutory classification drawn by the legislature, *see, e.g.,* Massage Parlors, Inc. v. City of Balto., 284 Md. 490, 398 A. 2d 52, 56 (1979), and the rules applicable to discriminatory enforcement or administration cases, *see* text *supra.*

emotional problems" and that, unlike the parents of his codefendants, the appellant's mother refused to accept custody following his arrest, resulting in his being detained overnight in a juvenile home. In view of this evidence, the Court of Special Appeals concluded that the reasons for the filing of the petition precluded a finding of unjustifiable discrimination. It said that the basis for the decision to file the petition included non-economic factors based on the interests of the child or the public which necessitated that juvenile services be provided to effect the appellant's rehabilitation.

I, therefore, would affirm the judgment.

Judge Orth has authorized me to state that he concurs in the views expressed herein.