601 A.2d 1107

**In re KEITH G.**

**No. 60 Sept. Term, 1991.**

Court of Appeals of Maryland.

Feb. 26, 1992.

---

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for petitioner.

José Felipé Anderson, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief) Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of MD (Retired) Specially Assigned.

MURPHY, Chief Judge.

The question presented is whether dismissal of a juvenile delinquency petition is an appropriate sanction where the intake officer's preliminary inquiry exceeded, without a court order, the time requirement prescribed by Maryland Code (1984, 1991 Cum.Supp.), § 3–810 of the Courts and Judicial Proceedings Article. That section, a part of the Juvenile Causes Act, provides in pertinent part:

"(a) Except as provided in subsection (b) of this section, the intake officer shall receive:

(1) Complaints from a person or agency having knowledge of facts which may cause a person to be subject to the jurisdiction of the court; and

*   *   *   *   *   *

"(c)(1) Except as otherwise provided in this subsection, in considering the complaint, the intake officer shall make a preliminary inquiry within 15 days as to whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child. The intake officer may, after such inquiry and in accordance with this section:

(i) Authorize the filing of a petition;

(ii) Conduct a further investigation into the allegations of the complaint;

(iii) Propose an informal adjustment of the matter; or

(iv) Refuse authorization to file a petition.

*   *   *   *   *   *

"(e)(1) The intake officer may conduct a further investigation if based upon the complaint and the preliminary inquiry, the intake officer concludes that further inquiry is necessary in order to determine whether the court has jurisdiction or whether judicial action is in the best interests of the public or the child.

(2) The further investigation shall be completed and a decision made by the intake officer within 10 days, unless that time is extended by the court."

## I.

On February 1, 1990, a complaint alleging felony theft and related offenses was filed with the Department of Juvenile Services (DJS) against Keith G. Twenty-six days later, the intake officer conferred with Keith G. and his parents for the first time. Immediately following that conference, the intake officer recommended that a formal delinquency petition be filed against the juvenile. Subsequent to that petition being filed on March 19, 1990, Keith G. moved to dismiss it on the ground that the intake officer's preliminary inquiry was not completed in accordance with the mandatory requirements of § 3–810.

On June 5, 1990, the Juvenile Division of the District Court sitting in Montgomery County granted the motion and dismissed the petition. On appeal, the Court of Special Appeals affirmed. It held that the trial court did not abuse its discretion in dismissing the petition for the failure of the intake officer to complete the required investigation within the time prescribed by § 3–810, and without having obtained an extension from the court. *In Re: Keith G.*, 86 Md.App. 662, 587 A.2d 1164 (1991). We granted certiorari to consider the important public issue presented in the case.

## II.

The State acknowledges that it did not comply with the statutory time requirements of § 3–810. It nevertheless argues that dismissal of its petition is not a proper

sanction, pointing out that the statute contains no sanction for its violation. It asserts that when deciding whether dismissal of a juvenile petition is the appropriate sanction, we must examine the "totality of the circumstances," including the legislative purpose underlying the Juvenile Causes Act, namely, to provide for treatment, training, and rehabilitation consistent with the juvenile's best interests and the protection of the public.

Keith G. contends that both the legislative history and the mandatory language of § 3–810 indicate that dismissal of the juvenile petition is the correct sanction where the State fails to comply with the time requirements of § 3–810.

## III.

### A.

To ascertain and effectuate the legislative intention, a statute is to be construed reasonably with reference to its purpose, aim, or policy. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987). Additionally, the statutory language must be construed in light of and governed by its context within the overall statutory scheme; the statutory language is, of course, the primary source for determining the legislative intent. *Harford County v. University*, 318 Md. 525, 529, 569 A.2d 649 (1990); *Rucker v. Comptroller of the Treasury*, 315 Md. 559, 564, 555 A.2d 1060 (1989); *Jones v. State*, 311 Md. 398, 405, 535 A.2d 471 (1988). Thus, in examining the statutory language of § 3–810, we look to the purpose of the Juvenile Causes Act to determine whether dismissal of a juvenile action is an appropriate sanction for a violation of the statute's provisions. *See In re Patrick A.*, 312 Md. 482, 487, 540 A.2d 810 (1988); *In re Keith W.*, 310 Md. 99, 104, 527 A.2d 35 (1987).

Maryland's juvenile law is embodied in Code, Title 3, Subtitle 8 of the Courts Article. Section 3–802(a)(1) states that a primary consideration in a juvenile proceeding is "[t]o provide for the care, protection, and wholesome mental and

physical development of children" and to ensure "a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest." Another purpose of the juvenile statutes, as set forth in § 3–802(a)(2), is to remove the taint of criminality and the consequences of criminal behavior from children who have committed delinquent acts.[1] Section 3–802(b) requires that the "[Juvenile Causes Act] shall be liberally construed to effectuate these purposes." *See Keith W., supra,* 310 Md. at 106, 527 A.2d 35 ("the overriding goal of Maryland's juvenile statutory scheme is to rehabilitate and treat delinquent juveniles so that they become useful and productive members of society"); *Matter of Davis,* 17 Md.App. 98, 104, 299 A.2d 856 (1973) ("The raison d'etre of the Juvenile Causes Act is that a child does not commit a crime when he commits a delinquent act and therefore is not a criminal. He is not to be punished but afforded the supervision and treatment to be made aware of what is right and what is wrong so as to be amenable to the criminal laws.").

### B.

Under § 3–810, the juvenile intake procedure is a critical part of the juvenile court system, for the intake officer

---

1. To further the purposes of § 3–802, the legislature has enacted statutes, like § 3–810, to address the special needs of juveniles. For example, §§ 3–816(c) and 3–823(a) require that juveniles should be neither transported with criminals nor incarcerated in institutions used primarily for the confinement of criminals. Section 3–820(b) provides that in making a disposition of a juvenile cause after the juvenile has been adjudicated a delinquent, "[t]he priorities ... are [ensuring] the public safety and [providing] a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest." Moreover, § 3–824(a)(1) states that an adjudication of a child as a delinquent is not a criminal conviction and does not impose any of the "civil disabilities" ordinarily imposed by a criminal conviction. Finally, § 3–828(a) provides that "[a] police record concerning a child is confidential"; that it shall be maintained separate from those of adults; and that its contents may not be divulged except by order of court.

must determine whether the court has jurisdiction and whether judicial action is in the best interests of the public or the child. Indeed, we recognized in *In re Patrick A., supra*, 312 Md. at 488, 540 A.2d 810, that information provided by the intake officer was valuable in determining whether a petition should be filed. *See also In Re Laurence T.* 285 Md. 621, 625–26, 403 A.2d 1256 (1979) ("intake officer has substantial discretion in determining whether to file a petition regarding a particular child").

Under § 3–810(a)(1), the intake officer receives the initial complaint from a person or agency having knowledge of facts which may cause a child to be subject to the jurisdiction of the court.[2] Section 3–810(c)(1) provides that following receipt of the complaint, the intake officer must make a preliminary inquiry within 15 days to determine jurisdiction and the propriety of the proceeding. Section 3–810(e)(1) and (e)(2) authorize the intake officer to conduct a further investigation within 10 days, unless that time is extended by the court.

## C.

We have repeatedly said that the foremost consideration in a juvenile proceeding after a determination of delinquency is to provide children with a program of treatment and rehabilitation. *See In re Patrick A.; supra*, 312 Md. at 487, 540 A.2d 810. In *Keith W., supra*, 310 Md. at 99, 527 A.2d 35, we held that dismissal of the juvenile petition was improper where the adjudicatory hearing was not held within the time period prescribed by Maryland Rule 914. Although the Rule required that the hearing "shall" be held

---

2. If a complaint is brought by a local department of social services and alleges that a child is in need of the court's assistance because of parental neglect, the intake officer must immediately file a petition with the court. § 3–810(b)(2). Moreover, if a complaint alleges that a child 16 or over has committed an act that would be a crime of violence if committed by an adult, the intake officer must immediately forward the complaint to the State's Attorney for review and possible action. § 3–810(b)(3)(i). In all other cases, the initial decision whether to file a petition is in the discretion of the intake officer.

within the prescribed time period, and thus was mandatory, we said that "a statute or rule may be mandatory and yet not require dismissal as a sanction for failure to comply with its provisions." *Id.* at 104, 527 A.2d 35.[3] *See also In re Patrick, supra,* 312 Md. at 491, 540 A.2d 810. We explained that the special purpose of Maryland's juvenile statutes is not ordinarily best served by dismissal of the proceedings and that indeed dismissal is not proper absent "extraordinary and egregious circumstances." *Keith W., supra,* 310 Md. at 109, 527 A.2d 35. The Court further noted that when deciding whether dismissal is a proper sanction for violation of the mandatory requirements of a rule, the trial judge must examine the "totality of the circumstances," keeping in mind the overriding purpose of the juvenile statute.[4] *Id.*

Similarly, in *In Re: Dewayne H.,* 290 Md. 401, 430 A.2d 76 (1981), we held that dismissal of a juvenile petition was inappropriate where the disposition hearing was scheduled one day later than permitted by Maryland Rule 915. While we acknowledged that the language of the rule was mandatory, we found that dismissal was inappropriate in light of the purpose of the Juvenile Causes Act, and because the

---

3. In Keith W., we noted that *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979), held that dismissal of an indictment was an appropriate sanction for a violation of Rule 746 because the purpose of that statute was "intended to ... put teeth into a new regulation governing the assignment of criminal cases for trial." *Id.* at 318, 403 A.2d 356. However, in Keith W., we recognized that the considerations in the juvenile context are distinct from those in the criminal context. We stated that in contrast to Rule 746, Rule 914 was established to promote the goals of § 3–810. *In Re Darryl D.,* 308 Md. 475, 478, 520 A.2d 712 (1987) ("although certain of the constitutional rights incident to criminal prosecutions apply to juvenile delinquency proceedings, in this State the proceedings are civil rather than criminal in nature").

4. Maryland Rule 1–201(a) provides that when a rule
"by the word 'shall' or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequnces of the noncompliance in light of the totality of the circumstances and the purpose of the rule."

function of a disposition hearing was not to punish but to provide the juvenile with a program of treatment and rehabilitation. *Id.* at 405, 430 A.2d 76.

### D.

In support of his argument, Keith G. relies on recent decisions by this Court and the Court of Special Appeals, which held that dismissal of the juvenile petition was the proper sanction where the State failed to comply with statutory time limitations. He cites *In Re Patrick A., supra; In Re Steven B.,* 84 Md.App. 1, 578 A.2d 223 (1990); and *In Re James S.,* 286 Md. 702, 410 A.2d 586 (1980). These cases are inapposite; we explain.

In *Patrick A.* and *Steven B.,* the courts affirmed dismissal of the juvenile petitions where the State deliberately failed to conduct a preliminary investigation as required by the statute. Although Keith G. concedes the factual dissimilarity between these cases and the present case, he argues, nevertheless, that "failure to observe the clear statutory mandate in the intake procedure directions warrants dismissal." Here, however, the issue concerns not the absence of a preliminary investigation, but the timeliness of the intake officer's preliminary investigation.

Nor does *In Re James S., supra,* support dismissal as the appropriate sanction in this case. There, we held that a juvenile proceeding must be dismissed for the failure of the State to comply with the mandatory provisions of § 3–812(b).[5] Concluding that § 3–812(b) was in the nature of a statute of limitations, we considered the mandatory language of the statute, *i.e.,* "shall be prepared and filed," and its similarity to other provisions of the Code providing for statutes of limitation. For example, the Court observed that like § 3–812(b), § 5–101 of the Courts Article provides that "a civil action of law shall be filed within three years,"

---

5. Section 3–812(b) provides that "[p]etitions alleging delinquency ... shall be prepared and filed by the State's Attorney ... within 15 days after the receipt of a referral from the intake officer."

and § 5–105 that "an action for assault, battery, libel or slander shall be filed within one year."

By contrast, § 3–810 states that if the preliminary investigation and further investigation permitted by the statute requires more than 25 days to complete, the intake officer must obtain an extension from the court. The language of § 3–810 is distinguishable from our holding in *James S.,* and the language of §§ 5–101 and 5–105, because the legislature has authorized, through an extension by the court, more than 25 days to conduct the investigation. Thus, it is clear that if § 3–810 was to be applied like a statute of limitations, the legislature would not have empowered the court to extend the time period for the intake officer to complete his investigation.

## IV.

The language of § 3–810 is mandatory, and the legislature intended that the intake officer faithfully comply with the time requirements set forth in the statute. It is equally clear that the legislature recognized that the investigation by the intake officer might not be completed within twenty-five days and, for that reason, authorized an extension by court order without any time limitation. In examining the "totality of the circumstances," *see In re Patrick A., supra,* 312 Md. at 491, 540 A.2d 810, and recognizing that the special purpose behind the juvenile statutes is the rehabilitation and treatment of delinquent children, we hold that this purpose would not be served by the sanction of dismissal in this case. Here, the intake officer's preliminary investigation culminated in the recommendation that Keith G. is in need of the protection and benefits of the juvenile court system. To deny him that protection because the investigation was completed one day later than permitted by § 3–810 is improper, especially where he was not prejudiced by the delay. As the legislature did not provide for the sanction of dismissal for failure to obtain an extension by court order, we glean from its silence on this point that the appropriate sanction to be applied is an administrative

one against the offending intake officer, if warranted after consideration of all the circumstances. As we said in *In Re Keith W., supra*, 310 Md. at 104, 109, 527 A.2d 35, "the purpose of Maryland's juvenile statute is not ordinarily best served by dismissal of the proceedings"; and that "[o]nly the most extraordinary and egregious circumstances should be allowed to dictate dismissal as the sanction for ... violation of a procedural rule." *Id.* at 106 and 109, 527 A.2d 35.

JUDGMENT REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE MATTER TO THE JUVENILE DIVISION OF THE DISTRICT COURT, SITTING IN MONTGOMERY COUNTY, FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY KEITH G.

ELDRIDGE, Judge dissenting:

I agree with the conclusion of the trial judge and with Judge Robert Bell's opinion for the Court of Special Appeals, *In re Keith G.*, 86 Md.App. 662, 587 A.2d 1164 (1991), that dismissal of the juvenile delinquency petition ordinarily is the appropriate sanction where the intake officer exceeded the time limit mandated by Maryland Code (1974, 1989 Repl.Vol., 1991 Cum.Supp.), § 3–810 of the Courts and Judicial Proceedings Article, and where the intake officer failed to obtain an extension of time from the court as provided for in § 3–810(e)(2). In fact, it is the express provision for a court-ordered extension of time which confirms the legislative intent that dismissal of the petition should ordinarily be the sanction where the intake officer's investigation exceeds the statutory time limit. If the General Assembly had intended that dismissal not be the sanction, there would have been no reason to have provided for a court-ordered extension.